782 P.2d 82
**Alfred Wayne MARCH, Petitioner,**

v.

**STATE of New Mexico, Respondent.**

No. 18357.

Supreme Court of New Mexico.

Oct. 30, 1989.

Rehearing Denied Nov. 21, 1989.

William Ivry, Santa Fe, for petitioner.

Hal Stratton, Atty. Gen., Santa Fe, for respondent.

OPINION

SOSA, Chief Justice.

This case is before us on writ of certiorari to the court of appeals. In a 2–1 decision (No. 10,561, March 16, 1989, Chaves, J., dissenting), the court of appeals affirmed the judgment of the district court finding petitioner, Alfred Wayne March, to be a habitual offender and imposing on him an enhanced sentence. Petitioner contends that the trial court violated his constitutional rights under the Double Jeopardy provisions of the federal and state constitutions, in that he had originally been sentenced for a crime and had begun serving time, when the court increased his sentence for that crime following his successful appeal of the conviction of another crime. Having considered petitioner's contentions, the State's response and the court of appeals' decision, we reverse the court of appeals, and remand the case to the trial court for proceedings not inconsistent with our ruling herein.

The proceedings below began with petitioner's conviction on September 4, 1985 of burglary (Count I) and unlawfully taking of a motor vehicle (Count II). Petitioner's conviction for Count II was affirmed. Petitioner's conviction for Count I was reversed, the case was remanded, and he was convicted a second time. The sentences imposed by the trial court at the time of first conviction were to run consecutively.

After the second conviction on Count I, the State filed a supplemental information alleging that petitioner was a habitual offender, and seeking an enhanced sentence for Count I. The trial court found petitioner to be a habitual offender and increased his sentence for Count I by eight years. Petitioner again appealed his conviction on Count I, and was again successful. The State entered a *nolle prosequi* on Count I, and filed a second supplemental information alleging that petitioner was a habitual

offender and seeking an enhanced sentence on Count II. The court again found that petitioner was a habitual offender and increased the sentence on Count II by eight years.

■ The court of appeals ruled that because the legislature made it mandatory for the State to seek enhanced sentencing when a convicted felon is a habitual offender (NMSA 1978, § 31–18–19 (Repl.Pamp. 1987)), the State was required to pursue enhanced sentencing as to Count II. Therefore, the court of appeals reasoned, proceedings under the second supplemental information were merely an extension of the proceedings under the first supplemental information. The second sentencing enhancement hearing, the court of appeals concluded, was not a trial for Double Jeopardy purposes, but was in effect the same proceeding as the first sentencing enhancement hearing continued into the future. The State, for its part, argues that it originally did not seek enhanced sentencing on Count II merely out of oversight. Nevertheless, the State concedes that, despite the mandatory tone of Section 31–18–19, the prosecutor has discretion to seek or not to seek enhanced sentencing.

■ It seems clear enough that, while charging a person as an habitual offender is mandatory, a prosecutor has discretion as to when to charge the defendant as an habitual offender so long as the trial court retains jurisdiction over the defendant. Sentencing may violate concepts of double jeopardy if not within objectively reasonable expectations of finality. *State v. Cheadle*, 106 N.M. 391, 393, 744 P.2d 166, 168 (1987). Here the defendant's objectively reasonable expectation of finality was violated by the State's filing the information as to enhanced sentencing after the defendant's earning of meritorious deductions brought his service of sentence to an end. A defendant's objectively reasonable expectation of finality in sentencing for double jeopardy purposes turns upon NMSA 1978, Section 31–18–19 (Repl.Pamp. 1987), which declares it is the duty of the district attorney to bring the habitual offender charge "at any time, either after

sentence or conviction." We note that the statute does not say "after *serving* of sentence."

In *State v. Mayberry*, 97 N.M. 760, 643 P.2d 629 (Ct.App.1982), it was held that delay in bringing the habitual offender charge until after the defendant's conviction was summarily affirmed by the court of appeals, was not a due process violation, even though the prosecutor knew of the prior felony conviction before his conviction on the subsequent count.

In determining whether there is a point in time when the district attorney may no longer bring an habitual offender charge, we apply the same rationale relied upon in *State v. Baros*, 78 N.M. 623, 435 P.2d 1005 (1969), in which it was held that the court has authority to correct an irregular sentence at any time prior to when defendant has served his full sentence. The issue here, then, is expiration of the court's jurisdiction, not notice to the defendant.

Because of our earlier holding in *Lott v. Cox*, 76 N.M. 76, 412 P.2d 249 (1966), we find it necessary to distinguish that case from *Baros*. *Lott* involved an indeterminate sentencing statute; we now have determinative sentencing. Interpreting *Lott* retrospectively in light of *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), and *Cheadle*, the former statute created no expectation of finality in the length of sentence prior to the expiration of the maximum term. For example, a prisoner released on parole under the old system was subject to parole conditions for a period of time (at the discretion of the parole board) up to the remainder of his maximum term. NMSA 1953, § 41–17–31 (Repl.Pamp.1972).

Nevertheless, even interpreted in the above light, there remains a trace of ambiguity between our language in *Lott* and our opinion here. The language in *Lott* would permit sentence enhancement even had the parole board ordered the final discharge of a prisoner from parole status prior to the expiration of his maximum term. In constitutional terms, dicta in *Lott* seem to imply that the court's jurisdiction may be so extended because the defen-

dant's expectation of finality for double jeopardy purposes is determined solely with reference to the original sentence imposed by the trial court. Events transpiring subsequent to sentencing (e.g., discharge from parole) then would have no relevance in determining whether the original sentence was subject to enhancement.

■ Our holding herein, by contrast, includes in the determination of the defendant's reasonable expectation of finality the post-sentence award of good-time credits that result in a release date earlier than the absolute release date set under the sentencing authority of the court. In the light of post-*Lott* jurisprudence, the question thus is posed as follows: May the determination of a defendant's objectively reasonable expectation of finality take into account events transpiring subsequent to the imposition of the original sentence? We hold that it may.

Such a rule comports more fully both with common sense and precedent than the dicta in *Lott.* When a prisoner is discharged from custody, that individual has fully paid his or her debt to society arising from the commission of the offense upon which sentence and confinement issued. To hold otherwise creates an atmosphere of arbitrariness that is unfair to the prisoner and that undercuts the goals of the legislative and executive branches in rehabilitation and prisoner management as expressed in their good-time credit and parole policies.

The constitutional implications of *Lott* also would create a precedential anomaly. The *DiFrancesco* Court wrote:

> Although it may be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it * * * that argument has no force where, as in the dangerous special offender statute, Congress has specifically provided that the sentence is subject to appeal. Under such circumstances there can be no expectation of finality in the original sentence.

449 U.S. at 139, 101 S.Ct. at 438. If, because of an act of Congress, a defendant must entertain at the time of sentencing the possibility of a subsequent sentence *increase,* there is no reason why, because of legislative and executive policies, a defendant could not also contemplate at the time of sentencing the possibility of a subsequent sentence *decrease.*

In short, there is no reason to fix the defendant's reasonable expectations of finality to the length of the original sentence when that period is subject to change after the defendant has begun serving it. For example, there is no doubt that the original sentence is subject to enhancement after the defendant has begun serving it and before he has been discharged from custody. We therefore conclude that the language in *Baros*—to the effect that the court has jurisdiction to change a sentence any time before the defendant has completed serving his sentence—better comports with double jeopardy values and post-*Lott* jurisprudence.

Accordingly, we reverse the court of appeals because, according to the stipulation of the parties filed September 19, 1989, March finished his sentence on January 22, 1987. The State filed its information to enhance sentence on April 7, 1987. Therefore, the court having lost jurisdiction to enhance the sentence on Count II, Petitioner should be released from custody, as he has completed serving all valid sentences imposed on him.

For the foregoing reasons, we reverse and remand for such proceedings as are not inconsistent with our ruling herein.

IT IS SO ORDERED.

RANSOM, BACA, LARRABEE and MONTGOMERY, JJ., concur.