792 P.2d 1163

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Calvin GADDY, Defendant–Appellant.**

No. 11283.

Court of Appeals of New Mexico.

May 1, 1990.

OPINION

ALARID, Judge.

Defendant appeals the enhancement of his sentence as a habitual offender. The dispositive issue in the case is whether the district court had jurisdiction to determine defendant's status as a repeat offender when the court made that determination only after defendant had completely served his underlying sentence. We reverse.

FACTS

Defendant was convicted of a felony on July 5, 1985. On September 17, 1985, he was sentenced to three years in prison followed by two years of parole. Defendant was released from prison on September 17, 1987, and then was re-imprisoned for violation of the terms of his parole. On May 26, 1988, almost three years after the underlying sentence was imposed and while defendant was still serving the parole portion of his sentence in the penitentiary, the state filed a supplemental information charging defendant as a habitual offender. On November 21, 1988, defendant completed the prison term imposed for violation of his parole. On that date, he had completely served the underlying sentence and mandatory parole term. Subsequently, on January 3, 1989, defendant was adjudged a habitual offender and sentenced to an additional four years in the penitentiary. In sum, the state filed the supplemental information before defendant had finished serving his underlying sentence, but by the time defendant was determined to be a habitual offender, he had already served the entire underlying sentence.

■ Defendant appealed the enhancement of his sentence. The only issue raised in the docketing statement was a due process issue concerning the fact that the state waited almost three years before filing the supplemental information. Subsequently, in his brief-in-chief, defendant raised the issue of the trial court's lack of jurisdiction to enhance his sentence. Since the issue is jurisdictional, it may be raised for the first time on appeal. *State v. Aranda*, 94 N.M. 784, 617 P.2d 173 (Ct.App. 1980).

Hal Stratton, Atty. Gen., Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Peter Rames, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

DISCUSSION

■ Our supreme court recently addressed a case involving similar although not identical facts. *See March v. State*, 109 N.M. 110, 782 P.2d 82 (1989). In *March*, the state did not file the habitual offender information until defendant had completed serving the underlying sentence. Accordingly, both the filing of the supplemental information and the determination that defendant was a habitual offender occurred after defendant had finished serving his sentence. Faced with those facts, the supreme court held that the procedure followed by the state violated double jeopardy principles, resulting in a lack of jurisdiction to enhance defendant's sentence. The court's decision was based at least in part on an analysis of the defendant's objectively reasonable expectation regarding the finality of his sentence. *Id.*

In this case, we must decide how the *March* opinion applies to a situation in which the supplemental information was filed before defendant finished serving his sentence, but the court made no determination of his status as a habitual criminal until after he had finished serving the underlying sentence. Both parties refer to language in the *March* opinion to support their contentions. The state points to a sentence which concludes that defendant's objectively reasonable expectation of finality was violated by the state's *filing* of the supplemental information as to enhanced sentencing after the defendant's service of sentence ended. *See March v. State*. The state argues that any expectation of finality defendant may have had was destroyed when the supplemental information was filed, because at that point defendant knew his underlying sentence was subject to enhancement. Defendant could not have reasonably expected to escape the enhancement, argues the state, by merely serving out the underlying sentence.

Defendant, on the other hand, also points to the *March* opinion as determinative of the issue. He directs our attention to language holding that the court has authority to correct an irregular sentence at any time prior to the point at which defendant has served his full sentence, and that a court has jurisdiction to change a sentence only before the defendant has completed serving his sentence. *March v. State*. Defendant argues that this jurisdictional limitation is conclusive, because once an underlying sentence has been served, there is nothing left to be enhanced by the trial court. Defendant contends it does not matter that the state filed its supplemental information before he finished serving his sentence. He relies on the *March* opinion for the proposition that the issue is not notice to the defendant, but the jurisdiction of the trial court to continue to act in the case. *See March v. State*.

Although the state's argument is not unreasonable, we find defendant's position more persuasive on this issue. As we have stated, the question to be answered in this case is whether defendant's "objectively reasonable expectations of finality" regarding his sentence were violated by the procedure followed in this case. *March v. State; see also United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (defendant can have no expectation of finality in his original sentence where a statute provides that the sentence is subject to appeal by the government; absent such reasonable expectation of finality, double jeopardy principles are not violated by allowing increased sentence following appeal).

■ The habitual offender punishment provisions authorize enhancement of an underlying sentence, and do not constitute a separate and distinct offense. *See State v. James*, 94 N.M. 604, 614 P.2d 16 (1980); *State v. Mondragon*, 107 N.M. 421, 759 P.2d 1003 (Ct.App.1988). An unenhanced sentence remains a valid sentence until it is *determined* that defendant is a habitual offender and that the underlying sentence is subject to enhancement. *State v. Stout*, 96 N.M. 29, 627 P.2d 871 (1981). It is reasonable, therefore, for a defendant to expect that if he completely serves the valid underlying sentence before the state proves he is a habitual offender, he has extinguished his criminal liability and there is no sentence left to enhance. This is so

whether or not habitual offender proceedings have been filed already because the filing of such proceedings is not determinative of whether enhancement will actually occur. Only when a defendant is proven to be a habitual criminal is enhancement of the underlying sentence authorized, and the defendant's expectations of finality in the underlying sentence consequently destroyed. Up to that point, anything could happen in the habitual proceedings—the state could decide not to pursue them, or fail to prove its case. Therefore, we believe that double jeopardy considerations preclude the enhancement of a defendant's sentence after the defendant has completely served that underlying sentence, no matter when the habitual proceedings were initiated.

The result we reach is supported by analogous New Mexico authority. In *State v. Travarez*, 99 N.M. 309, 657 P.2d 636 (Ct.App.1983), this court addressed a situation in which defendant was serving a probationary term resulting from a deferred sentence. The state filed proceedings to revoke defendant's probation while he was still serving it, but the petition to revoke the probation was not granted until after defendant had completed his full term of probation. Relying on NMSA 1978, § 31–20–9 (Repl.Pamp.1987), this court held that by the terms of that statute, defendant was deemed to have satisfied his liability for the crime upon expiration of the original two-year probation period, and that the trial court had no further jurisdiction to revoke the probation. *Travarez* is significant because it reflects this court's perception of a legislative intent to deprive trial courts of jurisdiction to alter sentences once those sentences have been satisfied. *See also* NMSA 1978, § 31–20–8 (when suspended, as opposed to deferred, sentence has been completely served, defendant has satisfied his liability for the crime). If service of a suspended or deferred sentence completely satisfies a defendant's liability for a crime and deprives a trial court of further jurisdiction over the defendant, even though proceedings directed at the sentence have already been filed, it would be anomalous to hold that service of a

sentence of incarceration would not have the same result.

Our result is also supported by cases from this and other jurisdictions which, although they do not discuss the "reasonable expectation of finality" issue, hold that a court has no further jurisdiction over a defendant who has completely served a sentence. *See, e.g., State v. Baros*, 78 N.M. 623, 435 P.2d 1005 (1968) (cited heavily by the *March* opinion for this proposition); *Reynolds v. Cochran*, 138 So.2d 500 (Fla.1962) (defendant completely served the underlying sentence, and the trial court thus had no power to enhance his sentence under the Florida habitual offender statute); *Davis v. Wainwright*, 408 So.2d 824 (Fla.App.1982) (when defendant has already served an improperly mitigated sentence, court has no jurisdiction to reimpose original, unmitigated sentence); *Commonwealth v. Dressell*, 174 Pa.Super. 39, 98 A.2d 430 (1953) (where sentence has been fully executed, court's power to subject defendant to additional punishment is gone). These cases appear to reflect the prevailing view regarding a court's power over a defendant who has completely served a sentence.

In reaching this result we have not overlooked *State v. Acuna*, 103 N.M. 279, 705 P.2d 685 (Ct.App.1985). In that case, this court held double jeopardy principles were not violated when a defendant was ordered to serve the mandatory statutory parole period, even though his judgment and sentence did not mention such a requirement and he had already served the incarceration portion of the judgment. The basis for the decision was that parole periods following incarceration are mandatory by statute and are automatically included in any sentence. In addition, the defendant had signed a parole agreement. This court decided that under the circumstances, defendant had not persuaded us he had a reasonable expectation that he would not be required to serve the mandatory period of parole. Habitual offender enhancements, on the other hand, despite the mandatory tone of the statute, are not automatically included in any sentence imposed on a defendant.

Prosecutors have discretion to bring habitual proceedings or forego them. *See March v. State.* This discretion, and the fact that, even if habitual proceedings are initiated, they may not be successfully concluded, distinguish defendant's reasonable expectations of finality in this case from the expectations held by the defendant in *Acuna.*

We also recognize that, as the dissent points out, the result in this case is inconsistent with *Lott v. Cox,* 76 N.M. 76, 412 P.2d 249 (1966). Unlike the dissent, however, we do not believe we are bound by *Lott.* Although the supreme court did not explicitly overrule *Lott* in the *March* opinion, the relevant language in *March,* to the effect that a court retains jurisdiction to enhance a sentence only until defendant completely serves his sentence, impliedly overrules the *Lott* holding. Therefore, *Lott* is no longer controlling authority on this issue. We also note that most, if not all, of the cases relied on in the *Lott* opinion are no longer valid, having been superseded by other cases or by amendments to the applicable statutes. *See, e.g., State ex rel. Williams v. Henderson,* 289 So.2d 74 (La.1974) (habitual statute substantially similar to New Mexico's requires *completion* of enhancement proceeding before defendant finishes serving sentence to be enhanced); *see also State v. Howiler,* 26 Ohio App.3d 181, 499 N.E.2d 10 (1985) (discussing Ohio's statute, as amended). This lends additional support for our view that *Lott* has been superseded by later pronouncements in this area of law.

Based on the foregoing, we hold defendant's reasonable expectations of finality, and therefore his right to be free from double jeopardy, were violated when the trial court determined he was a habitual offender after he had completed serving the underlying sentence. We reverse and remand with instructions to discharge defendant.

IT IS SO ORDERED.

CHAVEZ, J., concurs.

HARTZ, Judge (dissenting).

I respectfully dissent. Although the majority's opinion provides a reasonable analysis of *March v. State,* 109 N.M. 110, 782 P.2d 82 (1989), and related New Mexico case law, the opinion understates the importance of *Lott v. Cox,* 76 N.M. 76, 412 P.2d 249 (1966). Also, the holding of the majority may lead to inappropriate results in some circumstances.

The facts in *Lott* are crucial. Lott was convicted on May 17, 1961, of breaking and entering. On May 23, 1961, he was sentenced to serve a term of not less than one nor more than three years. On May 19, 1961, the state filed a habitual-offender information against Lott. He was convicted by a jury on October 8, 1962, and sentenced to life imprisonment. The sentence imposed was declared to be void in *Lott v. Cox,* 75 N.M. 102, 401 P.2d 93 (1965). On April 28, 1965, Lott was resentenced to life imprisonment on the 1961 habitual-offender information. At that time Lott had completely served the maximum permissible sentence on the charge of breaking and entering. Our supreme court stated, "The legislature placed no time limit upon the filing of a recidivist information, at least until expiration of the maximum period of the punishment prescribed for the felony of which he was convicted and such further period as he may be under the control or custody of the penitentiary authorities." *Lott v. Cox,* 76 N.M. at 80, 412 P.2d at 252. The court found "no reason, constitutional or otherwise" to prevent resentencing in that case. *Id.*

Thus, in *Lott,* as in this case, the habitual-offender charge was filed while the defendant was serving his sentence and the habitual-offender enhancement was not imposed until after the defendant had completed serving his sentence. In *March,* on the other hand, the habitual-offender charge was filed after the defendant had completed his sentence. *Lott* and this case therefore can be distinguished from *March* on their facts. Whether that distinction is of legal significance depends upon whether the critical date for determining the jurisdiction of the sentencing court is (1) the

date of filing the habitual-information charge or (2) the date of imposition of sentence.

Although the *March* opinion creates doubt about the continuing validity of *Lott*, *March* made no direct criticism of *Lott*'s holding that the date of filing the habitual-offender information is the determinative date. The sole explicit criticism *March* makes of *Lott* related to the statement in *Lott* that the sentencing court had jurisdiction until "expiration of the maximum period of the punishment prescribed for the felony." *Lott v. Cox*, 76 N.M. at 80, 412 P.2d at 252. *March* said that the defendant's expectation of finality should be determined not by the maximum possible confinement but by the period actually served by the defendant. Yet even though *March* held that *Lott* provided district courts with too generous a period of time to exercise jurisdiction over habitual-offender proceedings, it did not specifically disapprove of *Lott*'s holding that the time of filing the habitual-offender information, rather than the time of sentence enhancement, determines jurisdiction. *March* explicitly recognized that the statement in *Lott* which it criticized was mere dictum, not necessary to the result in *Lott*—the habitual-offender information in *Lott* was filed years before Lott completed his prison term. *March* did not say that the *Lott* holding was incorrect.

Nor do I think that other language in *March* compels the conclusion that *Lott*'s holding has been overruled. As the majority notes, some statements in *March* suggest that our supreme court believes that the date of *sentencing* is the date of importance, but other statements emphasize the date of *filing* the habitual-offender charge. I believe that this seeming inconsistency can be resolved simply on the basis that the difference between the two dates was irrelevant to the outcome in *March*. Both the filing of the habitual-offender charge and the sentencing occurred after March had completed serving his underlying sentence. If our supreme court had made a considered determination in *March* that habitual-offender enhancement cannot be imposed after the defendant has completed serving the underlying sentence, regard-less of the date of filing of the habitual-offender information, then I would expect the description of the specific facts in *March* to focus on the date of sentencing, rather than the date of filing. Yet *March* never mentions the sentencing date. Moreover, the supreme court's decision in *March* appeared to attach importance to the filing date when it rejected this court's reasoning (in an unpublished decision) that the information had been filed prior to completion of service of March's sentence.

In sum, although *March* suggests that our supreme court may overrule the holding in *Lott* if the opportunity presents itself, I do not read *March* itself as overruling *Lott*. Therefore, under *Alexander v. Delgado*, 84 N.M. 717, 507 P.2d 778 (1973), our obligation is to follow *Lott*.

Moreover, even though the *Lott* court did not have the benefit of a good bit of double-jeopardy jurisprudence developed by the United States Supreme Court in recent years, *Lott* is still of controlling importance because of its construction of the New Mexico habitual-offender statute. Double-jeopardy analysis in the present context is essentially a matter of statutory interpretation. *United States v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), relies heavily, perhaps exclusively, on statutory language in determining whether a defendant has a protected "expectation of finality" that would prohibit an original sentence from being enhanced. In *DiFrancesco* the Supreme Court rejected a double-jeopardy challenge to a federal law permitting the government to appeal certain sentences. In determining whether the defendant had a legitimate expectation of finality, the Court did little more than look to the controlling statute. The Court wrote:

> The defendant, of course, is charged with knowledge of the statute and its appeal provisions, and has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired.

*Id.* at 136, 101 S.Ct. at 437.

> Respondent was ... aware that a dangerous special offender sentence is sub-

ject to increase on appeal. His legitimate expectations are not defeated if his sentence is increased on appeal any more than are the expectations of the defendant who is placed on parole or probation that is later revoked.

*Id.* at 137, 101 S.Ct. at 437.

Although it might be argued that the defendant perceives the length of his sentence as finally determined when he begins to serve it, and that the trial judge should be prohibited from thereafter increasing the sentence, that argument has no force where, as in the dangerous special offender statute, Congress has specifically provided that the sentence is subject to appeal.

*Id.* at 139, 101 S.Ct. at 438.

Such reliance on a statute to determine whether a defendant's rights under the Double Jeopardy Clause have been violated is not unique to the sentence-enhancement situation. The question of merger—whether a defendant can be sentenced consecutively for two offenses—is another double-jeopardy issue decided on the basis of legislative intent. *See State v. Ellenberger,* 96 N.M. 287, 629 P.2d 1216 (1981). For example, if a defendant is convicted at a single trial of setting an explosive that killed two people, double-jeopardy doctrine prohibits imposition of consecutive sentences for the two murders only if the legislature did not intend to permit such consecutive sentences.

Thus, whether defendant has an expectation of finality that would prohibit enhancement of his sentence after he has completed serving the term of his underlying sentence turns on whether the habitual-offender statute permits such a belated sentencing procedure. That matter of statutory interpretation was decided in *Lott.* Although the habitual-offender statute has been modified, there has been no material change in the language upon which *Lott* relied in deciding that a sentence could be enhanced pursuant to a timely filed information even if the enhanced sentence is imposed after the defendant has served all of the underlying sentence. *Compare* NMSA 1953, § 41–16–4 *with* NMSA 1978,

§§ 31–18–19 and –20 (Repl.Pamp.1987). (The interpretation of the statutory language in *Lott* was apparently the majority view among other jurisdictions at that time. *See Lott v. Cox.*) Thus, even if one discounts the value of *Lott* as precedent with respect to constitutional double-jeopardy principles, the statutory interpretation that it provides is, until overruled by our supreme court, compelling authority on the double-jeopardy issue presented by this case. *Cf. State v. Travarez,* 99 N.M. 309, 657 P.2d 636 (Ct.App.1983) (statute changed to forbid revocation of probation after expiration of period of deferred sentence).

Finally, although the facts of this case make it attractive to forbid imposition of a sentence enhancement after the underlying sentence has been fully served, in other situations the opposite result would seem more appropriate. For example, in *State v. George,* 218 La. 18, 48 So.2d 265 (1950), a case cited by *Lott,* the defendant had been discharged on the date he was sentenced because his pre-sentence confinement exceeded the sentence imposed. The Louisiana Supreme Court permitted the habitual-offender proceeding to be held shortly after sentencing on the underlying charge. The rule proposed by the majority here would foreclose this possibility even if the habitual-offender information had been filed concurrently with the underlying charge. As a practical consequence, cautious prosecutors will henceforth ordinarily seek to complete habitual-offender proceedings prior to sentencing on the underlying charge—perhaps a desirable result, but certainly not one that the legislature has seen fit to compel. Permitting imposition of an enhanced sentence after complete service of the underlying sentence also seems fair if delay in the habitual-offender proceeding was caused by the defendant or by reversal on appeal of a previous enhancement imposed on the same habitual-offender information.

In my view, delay in imposition of a habitual-offender enhancement can be evaluated more appropriately under speedy-trial doctrine than under double-jeopardy doc-

trine. Once the sentence imposed has been completed, the defendant has a strong claim to repose, to be left alone. I would weigh this right to repose rather strongly in applying the balancing test for determining whether the right to a speedy trial has been violated. *See Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (balance length of delay, reason for the delay, assertion of the right to a speedy trial, and prejudice to the defendant). Only in the case of a quite short delay, as in *State v. George,* or when there are compelling reasons for the delay, could imposition of an enhanced sentence be permissible after defendant has completed serving the sentence on the underlying conviction. Although in measuring the length of the delay in a habitual-offender proceeding we have used the time of filing the habitual-offender information as the starting point, *see State v. Santillanes,* 98 N.M. 448, 649 P.2d 516 (Ct.App.1982), it may be more appropriate to consider the habitual-offender proceeding as simply part of the sentencing on the underlying charge and therefore to measure the delay from the time of the conviction on the underlying charge.

Despite the failure of defendant's appellate briefs to rely specifically on the right to a speedy trial, the gist of defendant's complaints is analogous to such a claim. Because the law in this area has been particularly murky, I would not be overly strict about defendant's pigeonholing of his contentions. I would remand for further proceedings before the district court on the question of defendant's right to a speedy trial.