825 P.2d 238

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Scott W. McDONALD, Defendant–
Appellant.**

**No. 12641.**

Court of Appeals of New Mexico.

Nov. 18, 1991.

Certiorari Denied Jan. 7, 1992.

Tom Udall, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Susan Roth, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

APODACA, Judge.

Defendant appeals from the trial court's order revoking his suspended sentence, imposing the balance of his original eighteen-month sentence, and enhancing the original sentence by one year under our state's habitual offender statute. On appeal, defendant argues that the trial court erred by enhancing defendant's sentence and revoking his suspended sentence after he had completed his underlying sentence. Defendant essentially raises three sub-issues under this argument: (1) the trial court did not make an explicit finding that defendant was a fugitive under NMSA 1978, Section 31-21-15 (Repl.Pamp.1990); (2) the state did not raise the issue of defendant's fugitive status below; and (3) the state failed to make a showing that the bench warrant could not be served. We hold that the trial court's order was proper and thus affirm on all issues.

## BACKGROUND

Defendant pled guilty to a charge of unlawful taking of a motor vehicle. In November of 1987, he was sentenced to eighteen months in the penitentiary, to be followed by a one-year mandatory parole. The trial court then suspended all but six months of the sentence and placed defendant on probation. The judgment and sentence expressly stated that the state reserved the right to file a supplemental criminal information alleging any appropriate prior felony convictions for purposes of habitual criminal enhancement. Defendant signed a standard probation order and was released from confinement that same day. In March of 1988, the state filed a motion to revoke defendant's probation. The motion alleged that defendant had not reported to his probation officer since November of 1987, as he had been ordered to do, and that defendant had moved without leaving a forwarding address. A bench warrant was issued that same day, based on defendant's failure to comply with the conditions of his probation.

At some point between defendant's initial failure to report to his probation officer and March of 1988, he went to Arizona without notifying his probation officer. One condition of his probation was that he obtain permission from his probation officer before leaving the county of his residence. In September of 1988, defendant was convicted in Arizona of two felonies, attempted theft and criminal trespass. The Arizona order of confinement gave defendant credit for one hundred and eighty-five days of presentence confinement, indicating that defendant had been in jail in Arizona since approximately March 6, 1988. As a result of these convictions, defendant was committed to the penitentiary in Arizona to serve a four-year and a three-year sentence, to run concurrently.

The record does not reflect when exactly the district attorney in New Mexico became aware that defendant was incarcerated in Arizona, nor is it clear when the detainer was imposed on defendant's incarceration. There are indications that, as early as November 1988, defendant wrote to the trial court indicating his whereabouts and asking that he be brought before the trial court for a hearing on the parole revocation. Copies of this correspondence were sent by defendant to the district attorney. On December 14, 1989, defendant filed a pro se motion for speedy disposition of the detainer, which was denied.

When defendant completed his confinement in Arizona in June of 1990, the Arizona authorities released him to the Eddy County sheriff under authority of the detainer, and defendant was returned to New Mexico. That same month, defendant was arraigned on the petition to revoke and entered a plea of not guilty. Later, the state filed a supplemental criminal information, contending that defendant was a habitual criminal offender based on a prior felony conviction in the state of Washington.

Ultimately, defendant was found to have violated his probation and to be a habitual criminal offender. The suspended sentence

was revoked, and both the balance of the original eighteen-month sentence and a one-year enhancement were imposed. The trial court gave defendant credit against his sentence for certain periods of time, but explicitly denied any credit for the time from March 28, 1988, the date the warrant was issued on the probation violation, until June 4, 1990, the date defendant was turned over to the Eddy County Sheriff and returned to New Mexico. It is from this ruling that defendant appeals.

DISCUSSION

Defendant first argues that the trial court lacked jurisdiction either to revoke his probation or to impose the habitual offender enhancement because he completed the underlying sentence on November 3, 1988, the date that the probation agreement indicated his term of probation would end. *See State v. Gaddy*, 110 N.M. 120, 792 P.2d 1163 (Ct.App.1990) (trial court lacks jurisdiction to enhance a sentence once the sentence for the underlying conviction is completed); *State v. Travarez*, 99 N.M. 309, 657 P.2d 636 (Ct.App.1983) (trial court lacks jurisdiction to revoke probation after the term of the probationary period expires).

The state concedes that, had defendant completed the underlying sentence, the trial court would have lacked jurisdiction to proceed on either the probation revocation or the enhancement. The state argues however, that, on the facts of this appeal, the underlying sentence had not been completed. Thus, the critical question we must resolve is whether the underlying sentence was completed.

Defendant's argument that the probationary period and the underlying sentence were completed on November 3, 1988, depends *factually* on his contention that the trial court erred in denying him credit against his sentence for the time he was incarcerated in Arizona. Defendant correctly contends that he can be denied credit for this time only if he was a fugitive during the time in question. *See* § 31–21–15(B) and (C); *State v. Kenneman*, 98 N.M. 794, 653 P.2d 170 (Ct.App.1982). Defendant is a fugitive within the meaning of

the statute if the trial court finds that "a warrant for [his] return ... cannot be served...." § 31–21–15(C); *State v. Apache*, 104 N.M. 290, 720 P.2d 709 (Ct. App.1986).

The state argues that defendant did not raise below, and thus did not preserve, the issue that the trial court lacked jurisdiction on the basis that the sentencing period had expired. Thus, the state contends, defendant should not be allowed to raise this issue for the first time on appeal. In support of this argument, the state contends that defendant's incarceration in Arizona precluded service of the warrant.

We agree with the state that the issue defendant has argued on appeal was not raised or argued below or in the original docketing statement. Neither is the issue jurisdictional in nature, thus permitting defendant to raise it for the first time on appeal. The facts of this appeal do not present us with a situation in which the sentence imposed is illegal. Instead, the sentence was authorized by law. In *State v. Thomas*, 113 N.M. 298, 825 P.2d 231 (Ct.App.1991) we addressed a similar claim in the context of fundamental error. The doctrine of fundamental error will be invoked by an appellate court only when the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand, or when the court considers it necessary to avoid a miscarriage of justice. *State v. Ortega*, 112 N.M. 554, 817 P.2d 1196 (1991). The application of the fundamental error doctrine was appropriate to prevent a miscarriage of justice in *Thomas* because there was an insufficient showing in the record to substantiate the trial court's denial of credit for time served on probation against defendant's sentence. We decline to apply the doctrine of fundamental error in this case for the following reasons.

Both parties agree on appeal that the trial court's order did not contain an explicit finding that defendant was a fugitive during the period of time that he was incarcerated in Arizona. To the extent that defendant contends that the lack of a formal finding is reversible error, we dis-

agree. *See State v. Baca,* 101 N.M. 415, 683 P.2d 970 (Ct.App.1984) (formal finding of guilty is not necessary when trial court accepts plea and orders presentence report). The issue on appeal is not whether the formal finding is made, but whether the finding that is implicit in the trial court's actions is supported by the requisite showing. *See State v. Baca; State v. Garcia,* 98 N.M. 186, 646 P.2d 1250 (Ct.App. 1982). In any case, defendant failed to make the claim concerning the lack of a formal finding in the trial court and, therefore, has waived it for purposes of appeal. SCRA 1986, 12–216.

We also disagree with defendant's contention that the state failed to raise the issue of defendant's fugitive status below. The state originally raised the issue in July of 1990, at the hearing on the probation revocation, by asking the court to deny defendant credit against his sentence during the period of time in question. It pursued the issue again at the combined hearing on the supplemental criminal information and sentence on August 3, 1990. In both instances, it was clear that the state was requesting the trial court to deny defendant credit against his sentence for the period when he was incarcerated in Arizona. Additionally, defendant did not object to the lack of notice during the proceedings below, and, thus, any error arising from such a claim has been waived. SCRA 1986, 12–216. On this point, then, the only issue to be resolved by us focuses on the question of whether, on the facts before the trial court, the court properly denied the credit.

■ To determine the propriety of the denial of credit, we first examine the statutes concerning probation revocation. Section 31–21–15 addresses the return of probation violators. In this appeal, the state proceeded under Section 31–21–15(A)(1), which permits a trial court to issue a warrant for the arrest of a probationer for violation of any of the conditions of release. Subsection (A)(1) also provides that the warrant shall authorize the return of the probationer to the custody of the court or to any suitable detention facility designated by the court. Section 31–21–15(B) provides that, once the defendant is before the court, the court shall hold a hearing on the violation. The statute also sets forth several possible dispositions if the violation is proved. *See also State v. Apache.* Section 31–21–15(C) provides that a probationer is a fugitive within the meaning of the statute if the warrant cannot be served. If defendant is a fugitive, the statute gives the trial court discretion to consider whether the time from the date of the violation to the date of the arrest shall be counted as time served on probation.

Additionally, the relevant rules of criminal procedure clearly contemplate that an arrest warrant is served by arresting the defendant, meaning by taking him into physical custody and bringing him before the court. *See* SCRA 1986, 5–210; *see also State v. Barreras,* 64 N.M. 300, 328 P.2d 74 (1958) (an arrest warrant directs the appropriate officer to arrest defendant and bring him before the court to answer charges). In some circumstances, the issuance and execution of the arrest warrant is necessary to establish the court's jurisdiction over a defendant. *State v. Barreras.*

■ Based on our understanding of the language contained in the pertinent statutes and our rules of criminal procedure, we hold that a defendant is a fugitive within the meaning of Section 31–21–15(C) if he cannot be taken into actual custody and brought before the court pursuant to the arrest warrant. It is undisputed in this appeal that defendant could not be taken into custody under authority of the warrant because he was incarcerated in Arizona. We thus hold that the trial court, in its discretion, properly denied defendant credit against his sentence for the period of time he was incarcerated in Arizona because the warrant could not be served.

Defendant nonetheless argues that the warrant could have been served on defendant while he was in prison in Arizona, either by serving him with a copy of the document or through other channels such as the National Crime Information Center and the detainer process. Alternatively, defendant argues that he had actual notice

and thus was served with the warrant while still incarcerated in Arizona.

The flaw in this argument, however, is that an arrest warrant is not served in the same manner as documents in a civil suit, but by taking a defendant into custody and bringing him before the court. *Compare* SCRA 1986, 5–210 *with* SCRA 1986, 1–004 (Cum.Supp.1990). Defendant cites no authority for the proposition that actual notice rather than an arrest is sufficient to serve an arrest warrant, nor has our research disclosed any such authority.

Defendant next argues that the state could and should have extradited defendant once it was aware of his whereabouts. We note that both New Mexico and Arizona have adopted the Uniform Criminal Extradition Act. *See* Ariz.Rev. Stat.Ann. §§ 13–3841 to –3869 (1989); NMSA 1978, §§ 31–4–1 to –31 (Repl.Pamp.1984). Arizona has held that this Act does provide for extradition of defendants to face charges of probation violation. *See Mathieu v. Dupnik*, 129 Ariz. 322, 630 P.2d 1054 (Ct.App.1981). We assume, without deciding, that New Mexico law likewise provides for such extradition. *See Ex parte Nabors*, 33 N.M. 324, 267 P. 58 (1928). However, the issue before us is not whether the state could have extradited defendant, but whether it was required to do so. We find nothing in the statutes that would support such a requirement. On the contrary, the plain language of the statutes is framed in terms of service of an arrest warrant, and not in terms of extradition. Consequently, we conclude that the statute did not require efforts to extradite defendant if he was incarcerated outside New Mexico.

Defendant contends that incarceration in another jurisdiction is not, in itself, a sufficient reason for delay in a criminal trial. *See State v. Harvey*, 85 N.M. 214, 510 P.2d 1085 (Ct.App.1973) (discussing the right to a speedy trial in criminal cases). However, defendants in original criminal proceedings are afforded substantially greater protections than defendants in probation revocation proceedings. *Compare Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) (holding that diligent good faith efforts to extradite are required by the sixth amendment), *with Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (holding that under federal law the right to a prompt hearing on a parole revocation petition does not attach until defendant is taken into custody by the revoking jurisdiction).

Additionally, this court has held that the sixth amendment right to a speedy trial does not apply to probation revocation proceedings. *State v. Sanchez*, 94 N.M. 521, 612 P.2d 1332 (Ct.App.1980). Defendant does not argue that his rights to due process were violated, and thus we do not consider the due process implications under the facts of this appeal.

In arguing against our holding in this opinion, defendant contends that such a holding would give the state incentive to delay execution of arrest warrants for probation violations. We observe, however, that our holding is limited to the facts of this case—where a defendant absconds to another jurisdiction, commits a crime there, and, as a result, is ultimately incarcerated there. We recognize that the pendency of the probation violation proceedings may well affect a defendant's conditions of incarceration during the period he is serving the intervening sentence in another jurisdiction. For example, due to the detainer of the trial court, defendant's privileges in the Arizona prison were largely limited. However, as the United States Supreme Court has noted, the consequences of unresolved revocation proceedings are not as significant as the consequences of unresolved criminal charges. *See Carchman v. Nash*, 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985).

As *Carchman* points out, a revocation proceeding is usually based on the alleged occurrence of a subsequent crime, which narrows the issues and makes the outcome substantially predictable. Thus, the effect of resolving the matter usually would mean that a defendant's probation or parole might be revoked, and the detainer would continue in effect to secure his return to the paroling state, once his incarceration

**310**

was completed. Thus, as a practical matter, a speedy resolution of the proceedings is less important than in criminal cases where the outcome is not so predictable. Additionally, defendant's policy argument ignores the time and expense involved in extradition proceedings.

■ Relying on *State v. Franklin*, 78 N.M. 127, 428 P.2d 982 (1967), and *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct.App. 1985), defendant finally argues that the trial court erred in denying his motion for speedy disposition under the Interstate Agreement on Detainers Act as adopted in New Mexico. *See* NMSA 1978, § 31–5–12 (Repl.Pamp.1984). However, the Act does not apply to probation revocation proceedings. *Carchman v. Nash; State v. Sparks*, 104 N.M. 62, 716 P.2d 253 (Ct.App. 1986).

CONCLUSION

In summary, we hold that the trial court did not err in denying defendant credit for the time he was a fugitive in Arizona, reimposing his suspended sentence, and enhancing his sentence as a habitual offender. We thus affirm the trial court's order.

IT IS SO ORDERED.

PICKARD, J., concurs.

HARTZ, J., specially concurring.

HARTZ, Judge, specially concurring.

I concur in the result.

Because the state clearly claimed the applicability of NMSA 1978, Section 31–21–15(C) in the district court and Defendant did not challenge its application, I would hold that Defendant did not preserve the issue raised by his appeal and we should not consider it. *See State v. Thomas*, 113 N.M. 298, 825 P.2d 231 (Ct.App.1991) (Hartz, J., concurring).

As for the merits, I agree with the majority "that a defendant is a fugitive within the meaning of Section 31–21–15(C) if he cannot be taken into actual custody and brought before the court pursuant to the arrest warrant." By that standard, absence from New Mexico was enough to make Defendant a fugitive. An arrest warrant issued by a New Mexico court carries no authority to seize the person named in the warrant in another state and return that person to New Mexico. *See* 5 Am.Jur.2d *Arrest* §§ 18, 20 (1962).