1998-NMSC-036

968 P.2d 766

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Gilbert VILLALOBOS, Defendant–Petitioner.**

**No. 23595.**

Supreme Court of New Mexico.

Oct. 14, 1998.

Phyllis H. Subin, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Appellant.

Hon. Tom Udall, Attorney General, Max Shepherd, Assistant Attorney General, Santa Fe, for Appellee.

## OPINION

FRANCHINI, Chief Justice.

{1} On February 2, 1993, Gilbert Villalobos pled guilty to fourth-degree felony larceny (over $250). He received a sentence of eighteen months, the "basic sentence" for the crime pursuant to NMSA 1978, § 31–18–15(A)(6) (1977), which the court suspended. As part of the order suspending sentence, he was placed on probation for three years. The principal issue in this case is whether the fact that Villalobos was on probation, as opposed to parole, after the expiration of his basic sentence, gave him a reasonable expectation of finality regarding the potential for further punishment arising out of his last felony conviction.

{2} The State revoked probation on June 29, 1995, after the eighteen-month basic sentence period expired because Villalobos failed to comply with probationary conditions. He had three prior felony convictions and therefore the prosecutor filed a supplemental information accusing him of being a habitual offender within the meaning of NMSA 1978, § 31–18–17 (1979). The District Court granted Villalobos' motion to dismiss the information and the District Attorney appealed. The Court of Appeals reversed the District Court and this Court granted Villalobos' Petition for Writ of Certiorari on May 9, 1996. We affirm the Court of Appeals.

{3} Villalobos and his Public Defender had entered into a plea agreement with the prosecutor. The agreement included the following language:

> The State shall not file habitual offender proceedings against the Defendant *except that* if the Defendant receives a suspended sentence and thereafter violates the terms of that suspended sentence, the State may bring habitual offender proceedings against him. The Defendant expressly waives any and all time limits for filing habitual offender proceedings.

Directly above Villalobos' signature the agreement stated:

> I fully understand that is as part of this agreement, I am granted probation, a suspended sentence or a deferred sentence by the court, the terms and conditions thereof are subject to modification in the event that I violate any of the terms or conditions imposed.

{4} Villalobos argues that, the plea agreement notwithstanding, he legitimately had a reasonable expectation of his sentence's finality, and that jurisdiction to enhance it did not lie in the District Court after the basic sentence period expired. *See State v. Travarez,* 99 N.M. 309, 310, 657 P.2d 636, 637 (Ct.App.1983) (It is within legislature's power to define court's jurisdiction over sentencing). If an expectation of finality was reasonable in Villalobos' case, any District Court action to enhance his sentence would place him in jeopardy twice for the same offense and would violate amendments V and XIV to the U.S. Constitution. *U.S. v. DiFrancesco,* 449 U.S. 117, 139, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). It would also be a violation of Article II, Section 15 of the New Mexico Constitution.

{5} Under *DiFrancesco,* the constitutional prohibition against double jeopardy extends to punishments that would follow from a second conviction for the same offense. 449 U.S. at 129, 101 S.Ct. 426 (quoting *Ex parte Lange,* 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1874)). Thus, there may be no multiple punishments for the same offense. *Id.* (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)); *see generally White v. State,* 576 A.2d 1322, 1325 (Del.1990). A punishment is "multiple" if there has developed a reasonable expectation of finality in the possible severity of the sentence. The *DiFrancesco* Court held that no reasonable expectation of finality exists in a sentence when Congress has enacted a statute allowing for the possibility the prosecutor could still successfully appeal the sentence. 449 U.S. at 136, 101 S.Ct. 426.

{6} The controlling statutes in this case are NMSA 1978, § 31– 18–19 (1955), which reads in relevant part, "If at any time, either after sentence or conviction, it appears that a person convicted of a noncapital felony is or may be a habitual offender, it is the duty of the district attorney ... to file an information charging that person as a habitu-

al offender," and NMSA 1978, § 31–18–20 (1977), which directs that court to sentence a defendant as a habitual offender "whether he is confined in prison or not" if it finds the defendant was in fact previously convicted of an enumerated crime or crimes. The actual time that the State may enforce these statutes is constitutionally limited to any time before an offender has an objectively reasonable expectation of finality in the sentence. *See March v. State*, 109 N.M. 110, 111, 782 P.2d 82, 83 (1989).

{7} In *March*, this Court held that earned meritorious deductions from the defendant's sentence created a reasonable expectation that the court would not impose an enhanced sentence after the expiration of his or her shortened sentence. *Id.* In *State v. Gaddy*, 110 N.M. 120, 122, 792 P.2d 1163, 1165 (Ct.App.1990), the Court of Appeals held that the lower court violated the defendant's double jeopardy right when it assumed jurisdiction to determine the defendant's status as a habitual offender after he had finished serving a sentence that consisted of a prison term, a period of release of parole, and a period of re-imprisonment after violation of parole. Finally, in *State v. Roybal*, 120 N.M. 507, 903 P.2d 249 (Ct.App.1995), the Court of Appeals held no reasonable expectation of finality existed and that the court had jurisdiction to determine habitual offender status where the defendant had finished his prison term but was still on parole. The court said a parolee still under sentence is constructively a prisoner of the state, and therefore has no constitutionally valid expectation of finality. 120 N.M. at 510, 903 P.2d at 252.

{8} Villalobos argues that a distinction exists, to be susceptible to a judicial determination of habitual offender status, between probation and parole. The common law difference between probation and parole is that the former involves suspending the imposition of a sentence, classically a task of the trial judge, while the latter partakes of the nature of a pardon, traditionally within the discretion of the executive. *See* 21 Am. Jur.2d *Criminal Law* § 567 (1981). The Legislature defined the two terms maintaining this distinction, in the Probation and

Parole Act at NMSA 1978, § 31–21–5 (1978), that reads as follows:

A. "probation" means the procedure under which an adult defendant, found guilty of a crime upon verdict or plea, is released by the court without imprisonment under a suspended or deferred sentence and subject to conditions;

B. "parole" means the release to the community of an inmate of an institution by decision of the board or by operation of law subject to condition imposed by the board and to its supervision[.]

{9} The legislative scheme continues with NMSA 1978, § 31–21–14(C) (1955), which provides that if a parolee violates his or her parole, "the board may continue or revoke the parole or enter any other order as it sees fit." The statute requires the court give probation violators credit for time served equal to the length of the suspended sentence. NMSA 1978, § 31–21–15 (1963); *State v. Kenneman*, 98 N.M. 794, 798, 653 P.2d 170, 174 (Ct.App.1982). Section 31–21–14(B), combined with NMSA 1978, §§ 31–20–5 and 6 (1963), provide that, in the case of a perceived probation violation after the basic suspended sentence has expired, the director of the corrections department field services division may arrest the offender. After a hearing, which may be informal, the court may set a wide variety of new conditions, including additional probation for five years, "volunteer labor" or community service, and "any other conditions reasonably related to his rehabilitation." Section 31–20–6(D).

{10} Since both probation and parole violators' fate is highly uncertain, no substantial difference may exist between probation and parole for purposes of one's objectively reasonable expectation of finality in a sentence while out on release. Villalobos therefore argues that this Court should overrule *Roybal* or draw a legal distinction between *Roybal* and the instant case since the defendant in *Roybal* was apparently re-imprisoned for probation violation, while the eighteen months of Villalobos' basic sentence had passed.

{11} We hold that Villalobos had no objectively reasonable expectation of finality

in a mere three-year probationary sentence. The above probation violator punishment terms are relatively open-ended and potentially quite serious; they are sufficient to defeat any expectation of finality and suffice as an affirmative basis for imposing an enhanced sentence. Therefore, Villalobos, particularly as a habitual offender, was on notice of the consequence of violating probation.

{12} In addition to these legislative provisions, it has been judicial policy to use probation as an acute form of punishment and a rehabilitation tool. As stated in *State v. Donaldson*, 100 N.M. 111, 119, 666 P.2d 1258, 1266 (Ct.App.1983):

> A judge in fashioning the terms of probation, may impose conditions reasonably related to the probationer's rehabilitation, which are designed to protect the public against the commission of other offenses during the term ... and which have as their objective the deterrence of future misconduct.

(Citations omitted.) We think the law and policy underlying the probation process prevent a reasonable expectation of finality in a probation sentence, even after the suspended sentence period.

{13} Not only was Villalobos on statutory notice that violating his probation had serious consequences, he consciously agreed to a plea bargain. That is, if he violated the terms of his suspended sentence, he expressly waived the time limits for the filing of supplemental information. Villalobos therefore hardly had any expectation in the finality of his sentence. *See State v. Freed*, 1996–NMCA–044, ¶ 11, 121 N.M. 569, 915 P.2d 325 (Ct.App.1996), citing *Montoya v. State*, 55 F.3d 1496, 1499 (10th Cir.1995) (plea agreement unambiguously put defendant on notice that state would seek further sentence enhancement).

{14} Finally, Villalobos claims that this appeal is moot because he "completed his three-year supervised probation period on March 8, 1996." In fact, the record shows that the state revoked probation on June 29, 1995. His sentence has therefore not been completed and imposition of an enhanced sentence is timely. *Gaddy*, 110 N.M. at 122–23, 792 P.2d at 1165–1166.

{15} For the foregoing reasons, this Court affirms the Court of Appeals's judgment.

{16} **IT IS SO ORDERED.**

BACA, MINZNER, and SERNA, JJ., and MICHAEL D. BUSTAMANTE, Court of Appeals Judge (sitting by designation), concur.