· 858 P.2d 416

**STATE of New Mexico,
Plaintiff–Appellant,**

v.

**Darnell SMITH, Defendant–Appellee.**

**No. 14151.**

Court of Appeals of New Mexico.

June 2, 1993.

Certiorari Denied Aug. 12, 1993.

Tom Udall, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Sammy J. Quintana, Chief Public Defender, Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

## OPINION

MINZNER, Chief Judge.

The State appeals from an order granting Defendant's motion to dismiss pursuant to the Interstate Agreement on Detainers (IAD). NMSA 1978, § 31–5–12 (Repl.Pamp.1984). Defendant successfully moved for dismissal of the indictment on the grounds that he was not brought to trial within the 180–day limit set forth in Section 31–5–12 Article 3(A). We hold that Defendant did not take adequate steps to trigger the IAD. We reverse.

Defendant was charged by information with four felonies in Dona Ana County and failed to appear for trial on December 13, 1990. He was arrested in El Paso on local charges and was incarcerated in the El Paso County Detention Center (EPCDC) on January 5, 1991. His Texas parole from a prior conviction was revoked on March 27, 1991, and he remained in EPCDC pending disposition of the local Texas charges. On August 26, 1991, he requested final disposition of all pending charges in Dona Ana County by giving notice to the EPCDC custodial officer. He apparently received no response.

The last pending Texas charge against Defendant was dismissed on October 21, 1991, and he was transported to the Texas Correctional Facility (TCF) in Huntsville pursuant to the parole revocation. On October 24, 1991, Defendant wrote a letter, which showed his address as EPCDC, to State District Court Judge Robles in Las Cruces requesting that any outstanding charges against him be disposed of as soon as possible. Judge Robles sent a copy of the letter to the prosecutor's office. Defendant finished his Texas sentence at TCF, was arrested on a Dona Ana County bench warrant on March 31, 1992, and then was returned to New Mexico to answer the charges pending in this case.

■ The parties stipulated at the hearing on the motion that "[o]n October 24, 1991, defendant caused to be delivered to Deputy District Attorney Alfred Perez a request for final disposition." They also stipulated that the prosecutor actually received the letter on November 18, 1991. In order to satisfy the provisions of the IAD, Defendant was required to establish that (a) he entered upon a term of imprisonment in a Texas penal or correctional institution; (b) during the continuance of that term of imprisonment the New Mexico charges in this case were pending against him; (c) a detainer based on the New Mexico charges was lodged against him; and (d) he caused written notice of the place of his imprisonment and his request for a final disposition of the New Mexico charges to be delivered to the appropriate prosecuting official and court in New Mexico. *See generally* Donald M. Zupanec, Annotation, *Validity, Construction, and Application of Interstate Agreement on Detainers*, 98 A.L.R.3d 160 (1980). We find it unnecessary to discuss all of these elements. In this case, the dispositive issue is whether the notice given was adequate. We hold that it was not. We do address the point at which the 180–

day limit began to run. Then we discuss the notice Defendant provided.

■ The IAD is not applicable where a person is in custody on an accusation that he has committed a crime. *See State v. Duncan,* 95 N.M. 215, 217, 619 P.2d 1259, 1261 (Ct.App.1980) (IAD does not apply to prisoner awaiting trial or sentence); *United States v. Dobson,* 585 F.2d 55, 61 (3rd Cir.), *cert. denied,* 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247 (1978) (IAD does not apply to a parole violator detainee until he is recommitted and sentenced to serve the balance of his sentence from which he had once been paroled). Here, Defendant was being held both on local charges and also because his parole had been revoked. There is no indication from the record that a final sentence was imposed as a result of the parole revocation prior to October 21, 1991, when the local charges were dismissed. Furthermore, Defendant did not enter the TCF, the institution to which he was committed, until after that date. *See United States v. Wilson,* 719 F.2d 1491, 1494–95 (10th Cir.1983). Absent final sentencing and entry into the TCF, the protections of the IAD were not applicable on August 26, 1991. However, as of the date of Defendant's incarceration in the TCF, he did become covered by the terms of Article 3(A) of the IAD. *See Wilson,* 719 F.2d at 1494–95; *see also State v. Maggard,* 16 Kan.App.2d 743, 829 P.2d 591, 595 (1992) (180–day period began when the defendant was returned from county jail to state prison where he was serving a sentence as a result of parole violations). Therefore, we conclude that Defendant had entered on a term of imprisonment at the time he wrote Judge Robles. We next address the adequacy of the letter as notice under the IAD.

*State v. Tarango,* 105 N.M. 592, 596–97, 734 P.2d 1275, 1279–80 (Ct.App.), *cert. denied,* 105 N.M. 521, 734 P.2d 761 (1987), *overruled on other grounds, Zurla v. State,* 109 N.M. 640, 645, 789 P.2d 588, 593 (1990), discusses three methods by which a prisoner can satisfy his obligations for activating the IAD: (a) transmission of his written notice and request for final disposi-

tion to the appropriate custodial officials; (b) substantial compliance with the IAD's requirements that certain documents be filed with the proper authorities in the receiving state; or (c) actual notice by the receiving state. While this case was pending on appeal, the United States Supreme Court issued its decision in *Fex v. Michigan,* — U.S. —, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). In *Fex* the Court interpreted the meaning of the Article 3(A) phrase " 'within one hundred and eighty days after he shall have caused to be delivered.' " *Id.* at —, 113 S.Ct. at 1088. The Court decided that "the 180–day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him." *Id.* at —, 113 S.Ct. at 1091. Because of the potential impact of *Fex* on *Tarango* and on this case, we ordered supplemental briefing. Both parties have filed supplemental briefs in response to the order; both agree that the issue resolved in *Fex* is not before this Court, since whatever date we use, that date precedes the day Defendant filed his motion to dismiss by more than 180 days. We agree. We note, however, that *Fex* impacts the analysis in *Tarango.* There we said that "a prisoner need only transmit the written notice and request for final disposition to the appropriate custodial officials to complete his or her responsibility under the agreement." *Id.,* 105 N.M. at 596, 734 P.2d at 1279.

■ The IAD is a congressionally-sanctioned interstate compact enacted under federal law. In construing it, we have looked to United States Supreme Court cases for guidance. *See State v. Sparks,* 104 N.M. 62, 65, 716 P.2d 253, 256 (Ct. App.), *cert. denied,* 103 N.M. 798, 715 P.2d 71 (1986). In *Fex* the Supreme Court said that the 180–day time period commences upon delivery. As a result, we modify our prior ruling in *Tarango* and hold that transmitting the written notice and request for final disposition to the appropriate custodial officials, absent facts establishing

substantial compliance or actual notice, is insufficient to activate the time constraints of the IAD. We do, however, discuss both substantial compliance and actual notice, the two alternative methods discussed in *Tarango*. At the hearing on the motion the judge observed that there was no factual issue regarding whether the New Mexico prosecuting officer and appropriate court received notice. This comment suggests that the trial court found that Defendant properly activated the IAD because the appropriate New Mexico authorities had actual notice. On the other hand, the trial judge's last comment at the hearing was that there was "substantial, although not complete, compliance" by Defendant.

█ Since there was no evidence that Defendant transmitted the certificate of status described in Article 3(A), *see Tarango*, 105 N.M. at 597, 734 P.2d at 1280 (substantial compliance requires filing of certificate of status), affirmance of the order of dismissal rests on the possibility that the appropriate New Mexico officials had "actual notice." There is no dispute regarding whether the appropriate New Mexico officials had actual notice of Defendant's October 24, 1991 request for processing under the IAD. Defendant argues that actual notice of his request alone is sufficient. The State contends that Defendant's communication was deficient in that it afforded no notice that he was confined in a penal or correctional facility or that he was serving a sentence rather than awaiting disposition of local Texas charges. We agree.

*Tarango* did not involve a close question of actual notice; there was no evidence that any IAD request was ever sent to the appropriate New Mexico prosecutor and court. In addition to finding that the New Mexico officials did not have actual notice of the defendant's request, we held that the defendant did not substantially comply with the statutory requirements of the IAD.

The actual notice rule stems from *Wise v. State*, 30 Md.App. 207, 351 A.2d 160 (1976). Wise was incarcerated in the Maryland State Penitentiary when he was noti-

fied of an *intrastate* detainer lodged against him in connection with local charges filed in Baltimore. A week later the defendant sent the criminal court clerk a letter, and the clerk sent the prosecutor a copy. The letter informed the trial court and the prosecutor of the defendant's intention to invoke detainer disposition. The defendant did not supply the required inmate status form, of which he had no knowledge. The Maryland court noted that the language of the intrastate detainer act was similar to that of the IAD with respect to the requirement of an inmate status form. It recognized that the status form would be helpful in aiding a prosecutor's decision whether to initiate costly extradition proceedings, but that the same information was much more accessible to a prosecutor in an intrastate detainer situation. The actual notice provided by the defendant's letter was held to be adequate to trigger the protections of the intrastate detainer act.

Later, in *Isaacs v. State*, 31 Md.App. 604, 358 A.2d 273 (1976), *overruled on other grounds, State v. Dean*, 42 Md.App. 155, 399 A.2d 1367, 1372 (1979), the question presented was whether a status certificate was necessary in an IAD context. A Georgia penitentiary prisoner's demand for speedy trial in Maryland was not accompanied by a certificate and the prosecutor replied that it was his opinion that compliance with the IAD was necessary to make the request for trial effective. The 180-day period for trial was held to have commenced when the status certificate was produced some four months later. The *Isaacs* court noted both that *Wise* was strictly concerned with intrastate detainers and that it is not always easy for a prosecutor to ascertain information about an out-of-state prisoner.

█ The State suggests that *Isaacs* should be read to require that a prisoner must supply a status certificate in order to establish actual notice on the part of the trial court and prosecutor. We do not interpret *Isaacs* so broadly. *But see McBride v. United States*, 393 A.2d 123, 128 (D.C.Ct.App.1978) (characterizing

*Isaacs* as requiring strict compliance), *cert. denied sub nom., Thomas v. United States,* 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979). When the Maryland prosecutor received the defendant's request for IAD processing, he was not furnished with sufficient information to charge him with actual knowledge of the specifics of the defendant's status which would establish eligibility under the IAD. In other words, actual notice of the defendant's request alone did not put the recipients on inquiry notice of the information that would be included in a status certificate. The prosecutor reacted reasonably by soliciting the certificate. However, since that inquiry did not yield any information for four months, the prosecutor could not be charged with knowledge of the information during that period.

■ All that was furnished to the New Mexico authorities in this case was notice of Defendant's prior incarceration in EPCDC and his request for IAD processing. This was insufficient to trigger the time requirements of the IAD and failed to constitute "actual notice." "Actual notice" has been defined to include both information positively proven to have been given, plus that which the recipient "is presumed to have received personally because the evidence within his knowledge was sufficient to put him upon inquiry." *Black's Law Dictionary* 1061–62 (6th ed. 1990); *Martinez v. City of Clovis,* 95 N.M. 654, 659, 625 P.2d 583, 588 (Ct.App.1980) (Sutin, J., specially concurring) (to prove actual notice it is sufficient to show by circumstances that the party to be charged knew the facts or should have known them, if proper inquiry were made having knowledge of facts putting the party on inquiry). While we do not believe that Defendant had to furnish the certificate required by the IAD to give the prosecutor and the district court actual notice, he did have an obligation to furnish the information that would be contained therein. *Cf. Isaacs,* 358 A.2d at 278 (neither the status certificate nor the information required to be included in the certificate was sent to the receiving state authorities). Since the Dona Ana prosecutor and the district court did not have actual notice of critical information, such as the fact that Defendant was presently incarcerated in the TCF, Defendant was not relieved of his burden of substantially complying with the requirements of the IAD, a burden which we have already stated he did not meet. *See Tarango,* 105 N.M. at 597, 734 P.2d at 1280; *see also Patrick v. Rice,* 112 N.M. 285, 289, 814 P.2d 463, 467 (Ct.App.), *cert. denied,* 112 N.M. 308, 815 P.2d 161 (1991) (the adequacy of notice is a question of law).

Since there is no basis in the record for a determination that Defendant properly activated the IAD, we reverse.

IT IS SO ORDERED.

DONNELLY and BIVINS, JJ., concur.