897 P.2d 1111

**Robert PALMER, Petitioner–Appellee,**

**v.**

**Joe WILLIAMS, Warden, Respondent– Appellant.**

**No. 21503.**

Supreme Court of New Mexico.

June 2, 1995.

Tom Udall, Atty. Gen., Anthony Tupler, Asst. Atty. Gen., Santa Fe, for appellant.

K. Walter Martinez, Grants, for appellee.

## OPINION

FRANCHINI, Justice.

Respondent–Appellant Joe Williams, the warden of the Western New Mexico Correctional Facility (WNMCF), seeks reversal of an order dismissing a detainer against a prisoner and releasing him from the remainder of his sentence. The trial court ruled that the prisoner had invoked the speedy trial provisions of the Interstate Agreement on Detainers, NMSA 1978, § 31–5–12 (Repl. Pamp.1984) (IAD), and that the state issuing the detainer had failed to comply with those provisions. Finding that the detainer was invalid, the court awarded the prisoner good-time credit on his sentence, which had been denied because of his failure to comply with the detainer. We reverse and remand.

## I.

Petitioner–Appellee Robert Lee Palmer pled guilty to fraud, in violation of NMSA 1978, Section 30–16–6 (Repl.Pamp.1994), and on December 18, 1987, the district court sentenced him to nine years in prison plus two years on parole upon completion of the prison term. Palmer was then transferred to the WNMCF to serve out his sentence.

The District Court of Coconino County, Arizona, issued a warrant for Palmer's arrest on July 29, 1991. Amy Pearson, the records custodian at WNMCF, received a certified copy of the warrant on February 12, 1992, and on the following day she informed Palmer of the detainer against him and of his right to make a request for final disposition of the complaint on which the detainer was based. Pearson offered Palmer the forms he needed to complete to request a final disposition of the Arizona charges under the IAD, but Palmer declined to sign the forms.

On June 4, 1992, Palmer filed a petition for writ of habeas corpus. The petition requested revocation of the Arizona warrant and removal of any detainer. Palmer alleged in his petition that Arizona had violated the speedy trial provisions of the IAD by taking no action to obtain his return to Arizona for trial. Palmer's parole began on July 1, 1992, but because Palmer refused to sign his parole certificates—which required Palmer to accept parole to the Arizona detainer—or sign a waiver of extradition to Arizona, he began serving his parole time incarcerated and ineligible for good-time credit. *See* NMSA 1978, § 33–2–34 (Repl.Pamp.1990) (discussing award of good-time credit).

A hearing on the petition for writ of habeas corpus was held on July 27, 1992. The district court ruled that the petition was a request for disposition of detainer pursuant to the IAD and that the request for disposition of detainer also acted as a waiver of extradition. The court ordered on August 3, 1992, that the State of Arizona had two weeks to pick up Palmer on the detainer.

The prosecutor filed a motion to reconsider the order, arguing that Palmer had not met the requirements for making a demand for disposition under the IAD. The court, however, denied this motion.

On August 17, 1992, the court held another hearing on the question of when Arizona would take custody of Palmer. The court stated at the hearing that Arizona had 180 days to "come and get him [Palmer]," but did not enter an order reflecting this extension until February 5, 1993, by which time the 180 day period had expired.

Palmer filed a motion for criminal contempt and a motion for an emergency hearing on February 16, 1993, arguing that the detainer should be removed and that he should be released because Arizona had not taken him into custody. The court held hearings on March 15 and 29, 1993, and reaffirmed its rulings that the petition for habeas corpus was a request for disposition of detainer pursuant to the IAD and that a request for disposition of detainer was a waiver of extradition. The court found that Palmer had been denied a speedy disposition on the Arizona detainer because more than 180 days had passed since the court had ordered the State of Arizona to pick up Palmer. The court therefore quashed the detainer and declared Palmer eligible for parole without the detainer as a permissible condition of parole.

Palmer remained in custody, however, because he requested parole to West Virginia and the Parole Board had to approve that request before it could issue parole certificates. On July 13, 1993, Palmer filed a motion for reinstatement of good-time credit and discharge, contending that he was entitled to good-time credit from the date he refused the detainer because the detainer was void from the outset and that he was subject to discharge since, with such good-time credit applied, he had already completed his parole and sentence. The court conducted a telephonic hearing on July 22, 1993, and, after indicating that it intended to rule in favor of Palmer, scheduled a second hearing on the motion to allow the warden of the WNMCF the opportunity to present evidence on whether Palmer had exhausted his administrative remedies pursuant to NMSA 1978, Section 33–2–11(B) (Repl.Pamp.1990).

The warden filed a notice of appeal of the order quashing the detainer on July 27, 1993. The court convened a hearing on August 4, 1993, to determine Palmer's eligibility for discharge from his sentence on the basis of good-time credit awarded against the prior parole time he served in custody. After taking evidence, the court found that Palmer had been denied good-time credit on the basis of his refusal to waive extradition or parole to the invalid Arizona detainer; that Palmer was entitled to good-time credit for the period he declined to submit to the detainer as a condition of his parole because the detainer was invalid; and that Palmer had exhausted his administrative remedies by sending letters requesting good-time credit to Dareld Kerby, the director of the Adult Prisons Division. The court concluded that, with good-time credit, Palmer had completed his mandatory parole, and ordered the prisoner released. The warden also appeals the order incorporating these rulings entered August 4, 1993.

## II.

The Interstate Agreement on Detainers is a compact among 48 states (including New Mexico and Arizona), the District of Columbia, and the Federal Government. *See Reed v. Farley,* ––– U.S. –––, 114 S.Ct. 2291, 2293, 129 L.Ed.2d 277 (1994). The IAD establishes a procedure by which a prisoner currently incarcerated in a participating state (the sending state) can demand a speedy disposition of charges pending in another participating state (the receiving state) when those charges provide the basis for the lodging of a detainer against him. Section 31–5–12. Article III(A) of the IAD provides:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after

he has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of confinement under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the state parole agency relating to the prisoner.

*Id.* Article III(B) provides that the prisoner shall give or send the "written notice and request for final disposition ... to the warden, commissioner of corrections or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court." *Id.*

Accordingly, our Court of Appeals has held that there are

> three methods by which a prisoner can satisfy his obligations for activating the IAD: (a) transmission of his written notice and request for final disposition to the appropriate custodial officials; (b) substantial compliance with the IAD's requirements that certain documents be filed with the proper authorities in the receiving state; or (c) actual notice by the receiving state.

*State v. Smith,* 115 N.M. 749, 751, 858 P.2d 416, 418 (Ct.App.) (citing *State v. Tarango,* 105 N.M. 592, 596–97, 734 P.2d 1275, 1279–80 (Ct.App.), *cert. denied,* 105 N.M. 521, 734 P.2d 761 (1987), *overruled on other grounds,* *Zurla v. State,* 109 N.M. 640, 645, 789 P.2d 588, 593 (1990)), *cert. denied,* 115 N.M. 795, 858 P.2d 1274 (1993). Our examination of the record shows that Palmer failed to activate the IAD by any of these methods.

Initially, we note that Palmer did not give written notice and request for final disposition to the custodial officials. "[A] prisoner need only transmit the written notice and request for final disposition to the appropriate custodial officials to complete his or her responsibility under the agreement." *Tarango,* 105 N.M. at 596, 734 P.2d at 1279. When another state lodges a detainer against a prisoner, "[t]he warden, commissioner of corrections or other official having custody of the prisoner has a duty to promptly inform the prisoner of the source and contents of [the] detainer." *Id.* at 597, 734 P.2d at 1280. At that time prison officials should offer the prisoner forms for notifying the appropriate custodial officials that the prisoner desires an expedited disposition of the charges underlying the detainer. When informed of the outstanding warrant in Arizona, Palmer declined to sign the applicable documents to invoke his rights under Article III of the IAD.

We believe that a prisoner could notify the appropriate custodial official of a request for final disposition of the complaint on the basis of which a detainer has been lodged against the prisoner without submitting the special forms offered for that purpose. However, in order to activate the IAD, the request must be in writing, sent to the appropriate custodial official, and must be clear, specific, and unambiguous. Although Palmer refused to sign the forms that would have notified the warden of his request for final disposition of the Arizona charges, he later filed a petition for writ of habeas corpus, in which he stated that he wished

> to dispose of Warrant for Arrest # 91CR1880F issued in Coconino County Arizona on July 29th, 1991, under the Speedy Detainer provisions of N.M.S.A. 31–5–12 as:–
>
> > The State of Arizona have known of Petitioner's whereabouts for over six months and have not proceeded either by way of fugitive warrant or Governor's warrant.
> >
> > That Petitioner is afforded protection under the N.M.S.A. 31–5–12.
> >
> > That the Petitioner discharges from the New Mexico Department of Corrections

on July 1st, 1992 and requests immediate disposition.

In the petition, Palmer described the relief requested as follows: "That the Warrant for Arrest be revoked and that any Detainers placed upon the Petitioner be removed by this Court."

■ Palmer requested that the court revoke the warrant and remove the detainer because he believed that Arizona had already allowed the applicable time limit to elapse. He ignores the fact, however, that there is no affirmative duty on a state under the IAD to seek custody of a prisoner for expeditious trial simply because the charging state becomes aware of the prisoner's incarceration. *State v. Beauchene,* 541 A.2d 914, 917 (Me. 1988). Arizona's inaction thus did not start the 180–day limit for disposition of the Arizona charges.

■ In addition, Palmer's petition cannot be construed as a request that by a prisoner for final disposition of the Arizona charges so as to trigger the 180–day limit under Article III. Palmer did not demand that Arizona bring him to trial on the charges, but instead asked the court to dismiss the charges. Palmer's request for revocation of the warrant did not put the warden on notice that Palmer was making a clear, specific, and unambiguous request for final disposition of the Arizona charges. The trial court therefore erred in ruling that the petition was a request for disposition of detainer pursuant to the IAD. *See Tarango,* 105 N.M. at 597, 734 P.2d at 1280 (holding that defendant had failed to trigger speedy trial provisions of IAD because he did not notify custodial official that he wished an expeditious resolution of charges).

■ Furthermore, Palmer did not prove that he had given actual notice to Arizona or substantially complied with the requirements of the IAD. He maintained that he had notified Arizona that he wanted the charges "taken care of" by filing a written motion to dismiss the indictment in Arizona. That motion does not appear of record in either New Mexico or Arizona. The prisoner "has the burden of providing a sufficient record to establish claims of violation of the agreement on detainers." *Id.* Because Palmer did not

give notice to the custodial official here in New Mexico that he wished prompt resolution of the Arizona charges, he must show a violation of the IAD by demonstrating either that he gave actual notice to Arizona, or that he substantially complied with the requirements of Article III. *See Smith,* 115 N.M. at 751, 858 P.2d at 418. In order to substantially comply with the requirements of the IAD, Palmer must have filed "the proper documents, including the certificate of status, with the proper prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction, using registered or certified mail, return receipt requested." *Tarango,* 105 N.M. at 597, 734 P.2d at 1280. He failed to prove substantial compliance or actual notice because there is no evidence in the record that he even contacted Arizona, let alone gave the proper authorities all the information required by the IAD.

Palmer has failed to establish that he met the requirements to trigger the IAD provisions under Article III for speedy disposition of detainers. Because Palmer did not invoke Article III protections, the time limits therein do not apply. The trial court therefore erred in ruling that Palmer had been denied a speedy disposition on the Arizona detainer.

The trial court also gave Palmer good-time credit based on its ruling that Palmer had been denied the credit because of his refusal to accept parole to an invalid detainer. We hold that the detainer was and is valid, and accordingly reverse the trial court's ruling on good-time credit.

### III.

We reverse the order quashing the detainer and the order discharging Palmer's parole portion of his sentence on the basis of reinstated good-time credit. We remand this case to the trial court with instructions to vacate these orders and to reinstate the detainer and the balance of Palmer's sentence. The petition for habeas corpus is dismissed.

**IT IS SO ORDERED.**

FROST and MINZNER, JJ., concur.