903 P.2d 249

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jose S. ROYBAL, Defendant–Appellant.**

**No. 15400.**

Court of Appeals of New Mexico.

Aug. 16, 1995.

Certiorari Denied Sept. 27, 1995.

508

Tom Udall, Attorney General and Gail
MacQuesten, Asst. Attorney General, Santa
Fe, for Plaintiff–Appellee.

Sammy J. Quintana, Chief Public Defender and Darryl A. Bouchard, Asst. Appellate Defender, Santa Fe, for Defendant–Appellant.

*OPINION*

ALARID, Judge.

Defendant appeals from his conviction as a habitual offender. Defendant raises four issues on appeal: (1) whether the trial court had jurisdiction since he had already served the underlying sentence as of the date of the habitual offender proceeding; (2) whether the trial court erred in admitting evidence of a prior unrelated plea agreement; (3) whether the State's failure to disclose its intention to seek admission of prior plea agreements violated Defendant's right to due process; and (4) whether the State acted vindictively in seeking the sentence enhancement after Defendant won reversal of two of his three convictions. We affirm the trial court on all issues.

FACTS

On November 9, 1990, Defendant was convicted of possession of a controlled substance (heroin, a Schedule I or II narcotic drug), child abuse, and tampering with evidence. He filed a notice of appeal on March 29, 1991. On May 16, 1991, the State filed a supplemental information, seeking to enhance Defendant's sentence under the Habitual Offender Act. *See* NMSA 1978, § 31–18–17(D) (Repl.Pamp.1994). This Court decided Defendant's appeal on October 14, 1992, affirming the trial court on the count of drug possession and reversing on the other two counts. *State v. Roybal,* 115 N.M. 27, 34, 846 P.2d 333, 340 (Ct.App.), *cert. denied,* 114 N.M. 550, 844 P.2d 130 (1992). The State then filed an amended supplemental information on January 12, 1993, for the purpose of proceeding on the habitual offender enhancement.

At the arraignment on the supplemental information on March 18, 1993, the trial court made it clear that Defendant was to serve out the 18–month sentence originally imposed for the drug possession conviction. The habitual offender hearing took place on December 16, 1993, at which time Defendant was convicted as a fourth-time habitual offender and received a sentence enhancement of eight years. On February 9, 1994, Defendant filed a notice of appeal of his habitual offender conviction. Pursuant to a motion for presentence confinement credit heard in May 1994, the trial court found that as of the date of the habitual offender hearing, Defendant had spent 551 days in jail for the drug possession conviction, four days longer than the original 18–month sentence.

DISCUSSION

I. Trial Court's Jurisdiction to Enhance Defendant's Sentence

Defendant contends that because he had effectively served his 18–month sentence as of December 16, 1993, the trial court was without jurisdiction to enhance his sentence pursuant to the Habitual Offender Act. Although Defendant raises this issue for the first time on appeal, we can consider it, because it is jurisdictional. *State v. Gaddy,* 110 N.M. 120, 121, 792 P.2d 1163, 1164 (Ct. App.1990). Once a defendant has completely served his or her underlying sentence, the trial court loses jurisdiction to enhance that sentence, even if the State filed the supplemental information before the defendant finished serving the underlying sentence. *Id.* at 122, 792 P.2d at 1165. However, parole is considered a part of a convict's overall sentence, at least for purposes of a court's sentencing authority. NMSA 1978, § 31–18–15(D) (Repl.Pamp.1994). Because Defendant was subject to a mandatory one-year parole, NMSA 1978, §§ 30–31–23(D) (Cum.Supp. 1994), 31–21–10(C) (Repl.Pamp.1994), the key question for us is whether parole is considered part of the sentence for purposes of a habitual offender enhancement. If it is, then the trial court did have jurisdiction, and the enhancement of Defendant's sentence was lawful.

Defendant argues that on December 16, 1993, he was eligible for parole because he had already served his 18–month sentence for drug possession. He further argues that a defendant on parole is not under the jurisdiction of the court, but rather under the supervision of the parole board. While this is true, § 31–21–10(C), and while it is also true that only the parole board, and not the court, can revoke parole and return the pa-

rolee to prison, NMSA 1978, § 31–21–14(A) (Repl.Pamp.1994); *State v. Hovey,* 87 N.M. 398, 399, 534 P.2d 777, 778 (Ct.App.1975), it is far from clear that the legislature intended to eliminate the court's jurisdiction to impose a habitual offender enhancement during the parole period.

The trial court has jurisdiction to impose a habitual offender enhancement pursuant to NMSA 1978, Section 31–18–20(A) (Repl. Pamp.1994). The trial court's jurisdiction seems to be of indefinite duration. As a consequence, only a constitutional provision could limit the duration of the court's jurisdiction. Defendant argues that double jeopardy considerations provide such a constitutional limitation.

▮ One of the earliest cases in New Mexico applying the double jeopardy prohibition to a sentence modification was *State v. Baros,* 78 N.M. 623, 435 P.2d 1005 (1968). *Baros* held that a trial court cannot increase a valid sentence once the defendant has begun serving it. *Id.* at 625–26, 435 P.2d at 1007–08. Even an irregular sentence cannot be set aside and increased once the defendant has fully served the sentence, because that would be tantamount to punishing the defendant twice, in contravention of the double jeopardy provisions of Article II, Sections 15 and 18 of the New Mexico Constitution. *Id.* at 626, 435 P.2d at 1008. A number of years later, our Supreme Court established the criterion for deciding when a sentence enhancement punishes a defendant twice. The Court held that "[s]entencing· may violate concepts of double jeopardy if not within objectively reasonable expectations of finality." *March v. State,* 109 N.M. 110, 111, 782 P.2d 82, 83 (1989). The *March* Court implied that an unenhanced sentence imposed on a habitual offender is, in the language of *Baros,* an "irregular sentence," that is subject to enhancement up to the time the defendant finishes serving his full sentence. *March,* 109 N.M. at 111, 782 P.2d at 83; *see also State v. Harris,* 101 N.M. 12, 14–15, 677 P.2d 625, 627–28 (Ct.App.1984) (such an unenhanced sentence is an unauthorized or illegal sentence).

▮ Thus, once a defendant has completely served his sentence, he has a reasonable expectation of finality in his case, despite the language of NMSA 1978, Section 31–18–19 (Repl.1994), and the trial court loses jurisdiction to enhance his sentence. In other words, the defendant's punishment for the crime has come to an end. Further punishment for that crime under any enhancement provision would violate the prohibition on double jeopardy, even if the defendant had notice that the State was planning to prosecute him under the Habitual Offender Act. *Gaddy,* 110 N.M. at 122–23, 792 P.2d at 1165–66.

▮ In *Gaddy,* unlike the present case, the defendant had completed the mandatory parole term as of the date of the habitual offender proceeding. *Id.* at 121, 792 P.2d at 1164. A defendant who is on parole, however, is still under sentence, § 31–18–15(D); *see also People v. Browning,* 809 P.2d 1086, 1089 (Colo.Ct.App.1990) ("[A] defendant's release on parole in no way alters the fact that he is still under sentence."), and is subject to a revocation of that parole. § 31–21–14(A). Therefore, the parolee is " 'constructively a prisoner of the state.' " *People v. Lucero,* 772 P.2d 58, 60 (Colo.1989) (en banc) (quoting *Schooley v. Wilson,* 150 Colo. 483, 374 P.2d 353, 354 (1962)) (additional citations omitted). More importantly, if the parolee violates parole and is returned to state custody, he will once again become an actual prisoner of the state, and the trial court will certainly have jurisdiction to enhance the sentence at that time. We therefore hold that a parolee can have no objectively reasonable expectation of finality until the parole period ends.

Defendant latches onto the term "underlying sentence" because of the use of that term throughout the opinion in *Gaddy. Gaddy,* 110 N.M. at 121–24, 792 P.2d at 1164–67. In *Gaddy,* when the defendant was released from prison, "he had completely served the underlying sentence and mandatory parole term." *Id.* at 121, 792 P.2d at 1164. This implies that "underlying sentence" as used in *Gaddy* refers only to the period of imprisonment. However, as Defendant acknowledges, because the defendant in *Gaddy* had served both the period of imprisonment *and* the period of parole at the time the trial

court enhanced his sentence, any language in *Gaddy* that suggests that a trial court loses jurisdiction after a defendant has served the sentence of imprisonment but not the parole term is dicta. Furthermore, most cases that employ the term "underlying sentence" do so to distinguish it from the enhancement sentence rather than from the parole term. *See, e.g. State v. McDonald,* 113 N.M. 305, 307, 825 P.2d 238, 240 (Ct.App.1991), *cert. denied,* 113 N.M. 44, 822 P.2d 1127 (1992); *State v. Bachicha,* 111 N.M. 601, 606, 808 P.2d 51, 56 (Ct.App.), *cert. denied,* 111 N.M. 529, 807 P.2d 227 (1991); *cf. State v. Najar,* 118 N.M. 230, 232, 880 P.2d 327, 329 (Ct.App.) (use of term "underlying conviction"), *cert. denied,* 118 N.M. 90, 879 P.2d 91 (1994); *Swafford v. State,* 112 N.M. 3, 16, 810 P.2d 1223, 1236 (1991) (use of term "underlying offense").

We therefore reject Defendant's argument, and hold that the trial court had jurisdiction to enhance his sentence.

## II. Remaining Issues

### A. Trial Court Properly Allowed Admission of Prior Plea Agreement

■ Defendant argues that the trial court erred in allowing the State to use a prior unrelated plea and disposition agreement for the purposes of the habitual offender proceeding. The agreement contains an admission of his identity in prior convictions. Defendant claims that the use of the agreement violated SCRA 1986, 11–410, now also codified at SCRA 1986, 5–304(F) (Repl.1992). That rule provides:

> Evidence of a plea of guilty, later withdrawn, a plea of no contest or guilty but mentally ill, or of an offer to plead guilty, no contest or guilty but mentally ill to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer.

SCRA 5–304(F). The agreement in question is neither a plea of guilty that was later withdrawn, a plea of guilty but mentally ill, nor an offer to plead guilty. While it could be construed as evidence of an offer to plead

guilty, it is itself a plea. If our Supreme Court meant to exclude a plea agreement if it evidences an offer, it would have included such a plea agreement under the category of pleas to be excluded. Also, while the statement as to Defendant's identity in former convictions was arguably made in connection with a guilty plea, it was not made in connection with one of the "foregoing pleas," i.e., a kind of plea that is itself inadmissible under the rule.

### B. Defendant Was Not Prejudiced by Any Possible Violation in Court's Admission of Evidence Because of Failure to Disclose

■ Defendant also contends that the prior plea agreements were improperly admitted, because the State did not disclose these documents to him, pursuant to SCRA 1986, 5–501(A)(1), (A)(3), and (F) (Repl.1992). He argues that he was prejudiced by the failure to disclose, because if the documents had been disclosed, his counsel would have been able to properly research the validity of their admission and to provide a more reasoned argument for their invalidity. We need not reach the question of whether the State breached a duty to disclose, as we disagree with Defendant on the question of prejudice. In the section above, we held that the documents were properly admitted. Defendant's having more time to research the question would not have changed the fact that the documents were admissible. Therefore, Defendant has failed to demonstrate that he was prejudiced by the alleged disclosure violation. *See State v. Bartlett,* 109 N.M. 679, 680, 789 P.2d 627, 628 (Ct.App. 1990).

### C. Defendant Did Not Properly Preserve the Issue of Vindictive Prosecution

■ Defendant claims prosecutorial vindictiveness, because the State did not begin to pursue in earnest the habitual offender enhancement until after he had obtained an appellate reversal on two of his three convictions. Defendant did not raise the vindictiveness argument during the habitual offender hearing on December 16, 1993. Although perhaps he did raise the argument during a hearing on a motion for presentence confine-

**512**

ment credit held on May 13, 1994, that hearing took place after Defendant filed his notice of appeal.

A "trial court loses jurisdiction of [a] case upon the filing of the notice of appeal, except for the purposes of perfecting such appeal, or of passing upon a motion directed to the judgment pending at the time." *Wagner Land & Inv. Co. v. Halderman*, 83 N.M. 628, 630, 495 P.2d 1075, 1077 (1972). The latter exception clearly does not apply to a motion for presentence confinement credit. Perfection of an appeal can only involve collateral matters, as opposed to actions that go to the heart of the trial court's judgment. *See Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 241, 824 P.2d 1033, 1043 (1992). Defendant's argument concerning vindictiveness was aimed at dismissing the habitual offender charge. It cannot be construed as an attempt to perfect the appeal. Therefore, Defendant failed to preserve the issue of vindictiveness below, and we need not consider this issue.

CONCLUSION

Accordingly, we affirm Defendant's conviction as a habitual offender.

**IT IS SO ORDERED.**

HARTZ and FLORES, JJ., concur.

HARTZ, Judge (Separate Opinion).

I join fully in Judge Alarid's opinion for the panel. In particular, the discussion of the trial court's jurisdiction to enhance Defendant's sentence accurately analyzes and applies the majority decision in *State v. Gaddy*, 110 N.M. 120, 792 P.2d 1163 (Ct.App. 1990). I add these comments only to state that I continue to hold the views expressed in my dissent in *Gaddy*. The views expressed in that dissent would lead to the same result in this case.