927 P.2d 44

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Bruce David MORAWE, Defendant–
Appellant.**

**No. 16167.**

Court of Appeals of New Mexico.

Sept. 16, 1996.

Certiorari Denied Oct. 29, 1996.

Tom Udall, Attorney General, William McEuen, Ass't Attorney General, Santa Fe, for Plaintiff–Appellee.

Hilary Lamberton, Lamberton & Riedel, Santa Fe, for Defendant–Appellant.

## OPINION

APODACA, Chief Judge.

1. Defendant appeals from his conviction for auto burglary and his sentence as an habitual offender. He claims the trial court erred by: (1) not dismissing the charges against him due to the State's non-compliance with the 180–day time limit under the Interstate Agreement for Detainers (IAD), NMSA 1978, § 31–5–12 (Repl.Pamp.1984); (2) imposing a habitual offender enhancement without legal authority; and (3) denying Defendant's motion to withdraw his admission to three prior felony convictions. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

2. Defendant was indicted in New Mexico for auto burglary and related offenses on November 18, 1992, and a bench warrant was issued for his arrest. He was arrested on the bench warrant in Odessa, Texas on November 28, 1992. On August 10, 1993, Defendant was convicted in Texas for crimes committed in that state, and he was sentenced to ten years in the custody of the Texas Department of Corrections. Defendant was transferred to the Texas Department of Corrections facility in Huntsville on September 7, 1993.

3. On September 6, 1993, the day before the transfer, Defendant wrote letters to the district attorney's office and the district court in New Mexico having authority and jurisdiction, respectively, over the New Mexico indictment. Defendant invoked his constitutional right to a speedy trial and "demanded" that the State either lodge a detainer or request temporary custody of him pursuant to the IAD. On September 16, 1993, the district attorney's office requested that Texas detain Defendant; the detainer was lodged on September 22, 1993.

4. On October 27, 1993, the district attorney's office sent a request to Texas for temporary custody. On the same day, Defendant signed a written notice and request for final disposition of the New Mexico charges.

Texas officials sent Defendant's notice and request, together with a certificate of his inmate status, to the district attorney's office on November 4, 1993. That notice was received on November 12, 1993. The district attorney's office accepted Texas' offer to deliver temporary custody of Defendant, and Defendant was booked in New Mexico on December 17, 1993.

5. Defendant's trial was initially scheduled for March 28, 1994. On March 25, 1994, Defendant unsuccessfully moved to dismiss the indictment on the grounds that the trial was not held within the 180–day time limit required under Article 3(A) of the IAD. Defendant pled no contest to a single count of auto burglary on April 5, 1994, reserving the right to appeal the denial of his motion to dismiss. On July 22, 1994, the trial court sentenced Defendant to eighteen months in prison, to be followed by a one-year period of parole. Defendant was given credit for 565 days of pre-sentence confinement.

6. Previously, on April 5, 1994, the State had filed a supplemental information alleging that Defendant had been convicted of numerous prior felonies. Defendant unsuccessfully moved to dismiss the supplemental information, and, on October 21, 1994, he admitted the State's allegation of three prior felony convictions. The trial court later enhanced Defendant's sentence by eight years and gave him credit for 712 days of pre-sentence confinement.

7. At the sentencing hearing on November 7, 1994, Defendant, who had essentially represented himself in the trial court, expressed concern that, on his return to Texas, he would not have access to New Mexico legal materials necessary to prepare the notice of appeal and docketing statement. Defendant and the trial court accepted the prosecutor's suggestion that Defendant be allowed to remain in the county detention center until February 1, 1995, so that he could have access to a law library. Defendant's access to the law library was limited from December 16, 1994, to January 23, 1995. On January 25, 1995, Defendant filed a motion to withdraw his admission to three prior felony convictions on the grounds that he was not

provided with the sixty days of access to legal materials that the State promised in return for his admission. The trial court denied Defendant's motion.

## II. DISCUSSION

### A. Application Of The IAD

8. Section 31–5–12 Article 3(A) of the IAD provides as follows:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he has caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner and any decisions of the state parole agency relating to the prisoner.

9. Defendant argues that the letter he sent to the district attorney's office, which was received on September 13, 1993, was adequate to provide the State with actual notice necessary to trigger commencement of the IAD time period as of that date. *See generally State v. Smith,* 115 N.M. 749, 751, 858 P.2d 416, 418 (Ct.App.) (prisoner can satisfy his obligations for activating the IAD through actual notice by the receiving state), *cert. denied,* 115 N.M. 795, 858 P.2d 1274 (1993). We consider it unnecessary to decide whether Defendant's letter furnished the district attorney's office with the required information under the IAD to charge that office with actual knowledge of Defendant's status as of September 13, 1993, the date of the letter's receipt. Instead, for purposes of our discussion, we will assume that the information contained in the letter was sufficient. That assumption does not help Defendant, however, for the absence of a detainer as of that date is fatal to Defendant's claim. *See United States v. Mauro,* 436 U.S. 340, 343, 361, 98 S.Ct. 1834, 1838–39, 1847–48, 56 L.Ed.2d 329 (1978) (the IAD becomes applicable only when detainer is filed); *United States v. Henson,* 945 F.2d 430, 435 (1st Cir.1991) (letter sent more than a month before issuance of detainer was "functionally insufficient to trigger the IAD 180–day speedy trial provision"). *See also Smith,* 115 N.M. at 751, 858 P.2d at 418 (New Mexico looks to United States Supreme Court cases for guidance in construing IAD).

10. The next question posed by Defendant's appeal is whether the 180–day period commenced on September 22, 1993, the date that the detainer was lodged by the district attorney's office. Defendant contends that the 180–day period should be counted from the date the detainer was lodged. Essentially, Defendant suggests we hold that his first notice and request lay dormant until activated by the lodging of the detainer, thus triggering commencement of the 180–day period at that time. *See United States v. Hutchins,* 489 F.Supp. 710, 713 (N.D.Ind.1980) (no explicit requirement that factors triggering IAD occur in special sequence); *Commonwealth v. Petrozziello,* 22 Mass.App. 71, 491 N.E.2d 627, 632 (assumption that defendant was not required to file new request for final disposition because prosecutors were informed of applicability of IAD time limit to pending charges and were fully prepared to go to trial), *review denied,* 397 Mass. 1104, 494 N.E.2d 388, *and cert. denied,* 479 U.S. 852, 107 S.Ct. 182, 93 L.Ed.2d 117 (1986). Under the facts of this appeal, however, we need not address the question posed by Defendant's argument.

11. Section 31–5–12 Article 3(A) provides that a prisoner shall be brought to trial within 180 days after he has delivered to the proper authorities "written notice of the place of his imprisonment *and his request for a final disposition.*" (emphasis added); *see Hutchins,* 489 F.Supp. at 713 ("[T]he prisoner has the opportunity to exercise his rights under Article III to request final disposition of the pending charges."). As we have previously stated, we have assumed for purposes of this discussion that the information contained in the letter received on September 13, 1993, sufficiently provided the requisite information concerning Defendant's location and the specifics of his sentence. However, we are not convinced that this letter adequately requested a final disposition as required by the IAD.

12. Specifically, Defendant advised the district attorney's office, "Were you to file a detainer pursuant to the provisions of the IAD, I *could* request final disposition pursuant to [Article 3 of] that Act[.]" (emphasis added). Certainly, a reasonable inference from Defendant's communication is that a post-detainer request for final disposition under the IAD would be forthcoming from him. *Cf. Palmer v. Williams,* 120 N.M. 63, 66, 897 P.2d 1111, 1114 (1995) (request to activate IAD must be clear, specific, and unambiguous). Additionally, we believe that requiring prosecutors to keep track of ambiguous pre-detainer requests under the IAD would undermine the orderly disposition of detainers and their underlying charges, and would be inconsistent with the practical administration of justice. *See* § 31–5–12, Art. 1 (purpose and policy of IAD is to promote expeditious resolution of unresolved charges in "orderly" manner).

13. Consequently, even assuming, without deciding, that Defendant is correct in contending that notice can remain dormant until activated by the lodging of a detainer, we hold that Defendant's letter was inadequate to activate his rights under the IAD. Defendant therefore failed to meet the request requirement necessary to trigger the IAD provisions prior to November 12, 1993. Because Defendant pled no contest to the New Mexico charges within 180 days of November 12, 1993, the earliest date on which the IAD speedy trial provisions could have been activated, the trial court did not err in denying Defendant's motion to dismiss.

**B. Authority To Impose Habitual Offender Enhancement**

14. Defendant was initially sentenced to eighteen months in prison to be followed by a one-year parole period. As of the date that the trial court enhanced Defendant's sentence based on his admission of three prior felonies, Defendant had accumulated 695 days of presentence confinement credit. *See generally* NMSA 1978, § 31–20–12 (Repl. Pamp.1994) (credit for time held in official confinement prior to conviction). At that time, therefore, Defendant had been in jail for more than the base term of eighteen months but less than the two and one-half years covered by the original sentence (the base term plus the one-year parole period). *See generally* NMSA 1978, § 31–18–15(C) (Repl.Pamp.1994) (statutory period of parole following incarceration is part of the sentence); *State v. Acuna,* 103 N.M. 279, 280, 705 P.2d 685, 686 (Ct.App.1985) (same).

15. Defendant argues that the trial court "lacked jurisdiction" to impose the enhancement because he had completed his "basic sentence" and had never been placed on parole. Defendant contends he was never "on parole" because he was never incarcerated in a Department of Corrections facility and thus never under the authority of the parole board. *See generally* NMSA 1978, § 31–21–10(C) (Repl.Pamp.1994) (inmate convicted of a fourth degree felony who serves sentence of imprisonment in a corrections facility designated by the corrections department required to undergo a one-year period of parole; during parole period, the person shall be under the guidance and supervision of the parole board) and NMSA 1978, § 31–21–25(B)(1) (Repl.Pamp.1994) (parole board has power and duty to grant, deny, or revoke parole). We are not persuaded that the trial court acted improperly.

16. The statutory context does not permit the interpretation that Defendant advocates. His argument overlooks the fact that, because he was delivered to New Mexico

pursuant to the IAD, he could not have been transferred to a Department of Corrections facility. *See* § 31–5–12, Art. 5(D) (when not in court or in transit, prisoner shall be held in a facility regularly used for persons awaiting prosecution). Additionally, under Defendant's interpretation of the parole and presentence confinement statutes, a pre-trial detainee whose confinement period extended into the parole period would serve a shorter sentence than a similarly situated offender who made bail. Creation of such an advantage would interfere with the design of Section 31–20–12 to assure equal treatment of all persons regardless of whether or not they are incarcerated prior to conviction. *See State v. Miranda*, 108 N.M. 789, 792, 779 P.2d 976, 979 (Ct.App.) (design of statutes giving credit for presentence confinement), *cert. denied*, 108 N.M. 771, 779 P.2d 549 (1989); *see also State v. Howard*, 108 N.M. 560, 562, 775 P.2d 762, 764 (Ct.App.) (purpose of Section 31–20–12 is to give relief to persons who are held in custody because of inability to obtain bail), *cert. denied*, 108 N.M. 433, 773 P.2d 1240 (1989). We will not interpret statutes in a manner that promotes absurd, unreasonable, or unjust results. *See Howard*, 108 N.M. at 562, 775 P.2d at 764.

17. Defendant's innovative arguments are also contrary to New Mexico case law. In *State v. Roybal*, 120 N.M. 507, 903 P.2d 249 (Ct.App.), *cert. denied*, 120 N.M. 498, 903 P.2d 240 (1995), the defendant had spent 551 days in jail, four days longer than his original eighteen-month sentence of incarceration, as of the date of the habitual offender hearing. We stated in *Roybal* that the defendant, who was eligible for parole after serving more than his eighteen-month sentence of imprisonment in jail, could not have an objectively reasonable expectation of finality until the parole period ended. *Id.* at 510, 903 P.2d at 252. We cannot perceive of any reason why the expectation of finality should be different in Defendant's situation. *Cf. March v. State*, 109 N.M. 110, 112, 782 P.2d 82, 84 (1989) (post-sentence award of good-time credit resulted in defendant's release on a date earlier than the absolute release date set under the sentencing authority of the trial court); *State v. Gaddy*, 110 N.M. 120, 121, 792 P.2d 1163, 1164 (Ct.App.1990) (defendant finished the

sentence of incarceration and mandatory parole term).

18. Finally, we reject Defendant's claim that treatment of his time in jail after the first eighteen months as a parole period in effect compels him to serve the sentence in installments. Because the legislature has deemed the parole period to be part of Defendant's sentence, we cannot separate the parole period from the eighteen-month period of imprisonment. *See Brock v. Sullivan*, 105 N.M. 412, 414, 733 P.2d 860, 862 (1987).

19. For these reasons, we hold that the trial court properly imposed a habitual offender enhancement during the mandatory parole period while Defendant remained in confinement on the underlying sentence.

## C. Motion To Withdraw Defendant's Admission To Three Prior Felony Convictions

20. Defendant argues that he admitted the State's allegation of three prior felony convictions on the condition that he be allowed to remain in New Mexico for sixty days after imposition of sentence so that he would have access to legal materials to prepare and perfect his appeal. Neither Defendant nor his standby counsel disclosed the existence of any plea agreement during the proceedings at which Defendant admitted to the three prior felony convictions. *Cf.* NMRA 1996, 5–304(B) (plea agreement shall be reduced to writing and trial court shall require disclosure at time plea is offered). It was not until the sentencing hearing approximately two weeks later, when Defendant was preparing his notice of appeal and docketing statement, that Defendant insisted on access to New Mexico legal materials. In response, the prosecutor suggested that Defendant be permitted to remain in the county detention center until February 1, 1995, so that he could have access to the materials. The record does not show that the prosecutor's suggestion was made before Defendant's admission to the three prior felony convictions.

21. Based on the record before us, we hold that the trial court's finding that no plea agreement existed was supported by substantial evidence. *See State v. Lucero*, 97

N.M. 346, 348, 639 P.2d 1200, 1202 (Ct.App. 1981) (in absence of written agreement or disclosure of agreement in open court, trial court makes factual determination as to existence of plea bargain), *cert. quashed,* 98 N.M. 51, 644 P.2d 1040 (1982). We thus conclude that the trial court did not abuse its discretion in denying Defendant's motion to withdraw his admission to three prior felony convictions. *See State v. Garcia,* 121 N.M. 544, 546, 915 P.2d 300, 302 (1996) (standard of review for denial of motion to withdraw a guilty plea).

## CONCLUSION

22. We conclude that the State complied with the 180–day requirement under the IAD. We also hold that the trial court properly imposed the habitual offender enhancement to Defendant's sentence and did not err in denying Defendant's motion to withdraw his admission to the three prior felonies. We therefore affirm.

23. **IT IS SO ORDERED.**

PICKARD and ARMIJO, JJ., concur.