862 P.2d 452

**STATE of New Mexico,
Plaintiff–Appellant,**

v.

**Jamie HASTINGS, Defendant–Appellee.**

**No. 13914.**

Court of Appeals of New Mexico.

Sept. 3, 1993.

Certiorari Denied Oct. 26, 1993.

Tom Udall, Atty. Gen., Elizabeth Blaisdell, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Edward O. Bustamante, Albuquerque, for defendant-appellee.

## OPINION

HARTZ, Judge.

The State appeals an order dismissing a criminal information with prejudice. The district court determined that the State had failed to comply with SCRA 1986, 5–604 (Repl.Pamp.1992), which requires criminal trials to begin within six months of the latest of several specified events. We reverse because the six-month period recommenced when the district attorney's office notified Defendant that he was not acceptable for its preprosecution diversion (PPD) program.

## I. BACKGROUND

Most of the pertinent facts are set forth in the district court's order of dismissal. We quote from the order:

1. [A] Criminal Complaint was filed against the Defendant on May 22, 1991, charging him with Unlawful Taking of a Motor Vehicle, contrary [to] Section 66–3–504 N.M.S.A., 1978 Comp., a fourth degree felony.

2. On June 12, 1991, the Defendant and his attorney signed a Waiver of Preliminary [Hearing and] Intent to Apply to P.P.D. which was filed in the Magistrate Court.

3. This pleading provided that the Defendant waived his right to a preliminary hearing and that his case be bound over for trial in the District Court and that the Criminal Information filed in District Court would be dismissed without prejudice if the Defendant was accepted into the P.P.D. Program. The pleading further provided that if the Defendant was terminated for failure to complete the P.P.D. Program, the Criminal Information would be reinstated in District Court. In the pleading, the Defendant also waived his constitutional right to a speedy trial and waived any rights as provided by Rule 5–604 of the Rules of Criminal Procedure for the District Courts concerning time limits for the commencement of trial.

4. A Criminal Information was filed in the District Court on June 24, 1991, charging the Defendant with Unlawful Taking of a Motor Vehicle.

5. On July 2, 1991, the Defendant filed a Waiver of Arraignment and Plea of Not Guilty with the District Court.

6. On October 23, 1991, a Pre–Prosecution Diversion Program Participation Agreement was filed with the District Court.

7. On November 21, 1991, the P.P.D. Director of the District Attorney's Office sent a letter to the Defendant stating his application to P.P.D. had been rejected.

8. Although there is a dispute between the parties as to whether the Defendant's application for P.P.D. was accepted or rejected and whether Defendant ever entered the P.P.D. Program, the Waiver of Preliminary Hearing and Intent to Apply to P.P.D. requires the State to dismiss the Criminal Information if the Defendant is accepted into P.P.D. and the Information was never dismissed by the State.

9. On January 30, 1992, Defendant filed his Motion to Dismiss the Criminal Information With Prejudice pursuant to Rule 5–604.

. . . .

11. The State of New Mexico did not apply [to the Supreme Court] for any extension of time in which to try the Defendant under Rule 5–604[ (C) ].

The pertinent provisions of the six-month rule appear in SCRA 5–604(B), which states:

**Time limits for commencement of trial.** The trial of a criminal case or an habitual criminal proceeding shall be commenced six (6) months after whichever of the following events occurs latest:

(1) the date of arraignment, or waiver of arraignment, in the district court of any defendant;

(2) if the proceedings have been stayed on a finding of incompetency to stand trial, the date an order is filed finding the defendant competent to stand trial;

(3) if a mistrial is declared or a new trial is ordered by the trial court, the date such order is filed;

(4) in the event of an appeal, including interlocutory appeals, the date the mandate or order is filed in the district court disposing of the appeal;

(5) the date of arrest of the defendant for failure to appear;

(6) if the defendant has been placed in a preprosecution diversion program, the date of the filing with the clerk of the district court of a notice of termination of a preprosecution diversion program for failure to comply with the terms, conditions or requirements of such program;

(7) the date the court allows the withdrawal of a plea or the rejection of a plea made pursuant to Paragraphs A to F of Rule 5-304.

Failure to comply with the time limits requires dismissal with prejudice of the information or indictment. SCRA 5-604(D).

■ The district court relied on SCRA 5-604(B)(1), which provides that the trial must commence within six months of the date of the waiver of arraignment. It was after that six-month period had expired that Defendant filed his motion to dismiss. In its appeal the State relies on SCRA 5-604(B)(6), which provides that the six-month period recommences on the date that a defendant is terminated from a PPD program. We agree that the six-month period recommenced when the PPD director sent his November 21, 1991, letter to Defendant advising him that his application to the PPD program had been rejected. Our conclusion does not depend upon whether (1) Defendant was admitted to the PPD program and then terminated or (2) Defendant was denied admission to the program.

## II. DISCUSSION

### A. Defendant Was Admitted and Then Terminated

■ Although the district court did not decide whether or not Defendant was admitted to the PPD program, we believe that the record establishes that he was admitted. On October 23, 1991, a Pre Pros-ecution Diversion Program Participation Agreement was filed in district court. Defendant, his attorney, and the prosecutor had all signed the agreement in September. Later in October the prosecutor and the PPD director signed a document entitled "Decision Concerning Pre-Prosecution Diversion Applicant." Two blanks immediately under the document title are labelled "Accept" and "Reject"; the "Accept" blank is filled in with three X's. Defendant relies on a subsequent document entitled "Amended Decision Concerning Pre-Prosecution Diversion Applicant," which shows Defendant as being rejected. It bears the signatures of the prosecutor and the PPD director, both dated November 5, 1991. The Comments section of the document, however, indicates that the reason for rejection is that Defendant had violated the requirements of the program by failing to keep appointments and failing to make a required $40 payment for restitution. We do not see how Defendant could be accused of failing to meet these requirements if he were not in the program. Thus, the PPD director's letter to Defendant of November 21, 1991, stating that his application had been rejected, amounted in essence to a prompt termination after Defendant's admission to the program.

. As we understand Defendant's brief on appeal, he contends that even if he was admitted to the PPD program and then terminated, certain conduct by the State required dismissal with prejudice of the charges against him. He relies on two alleged irregularities: (1) the State did not dismiss the complaint against him, although the district court ruled that the State had agreed to do so if Defendant was accepted into the PPD program, and (2) the State did not file in district court its letter rejecting him from the PPD program.

■ As for the first alleged error, any obligation to dismiss the charge while Defendant was participating in the PPD program was purely a contractual obligation to dismiss the charge without prejudice.[1]

---

1. We are assuming without deciding that the State was contractually obligated to dismiss the complaint without prejudice if Defendant was admitted into the PPD program. The State dis-

The Preprosecution Diversion Act does not require dismissal; it requires only that "criminal proceedings against the defendant shall be suspended." NMSA 1978, § 31–16A–6(B) (Repl.Pamp.1984). Defendant may well have been entitled to require compliance by the State with such a contractual obligation, *see State v. Trammel,* 100 N.M. 543, 546–47, 673 P.2d 827, 830–31 (Ct.App.1983) (trial court may require prosecutor to keep his end of the agreement), but Defendant did not seek such relief. Perhaps breach by the State of its contractual obligation also could free Defendant from an obligation (or waiver) he assumed under the contract. In the circumstances here, however, the State's alleged breach of contract cannot justify dismissal of the information with prejudice. *Cf. State v. Sisneros,* 98 N.M. 201, 203, 647 P.2d 403, 405 (1982) (remedy for breach of plea agreement is to allow the defendant to withdraw his plea); *State v. Smith,* 110 N.M. 534, 535, 797 P.2d 984, 985 (Ct.App.) ("[R]emedies should be tailored to the injury suffered from the violation."), *cert. denied,* 110 N.M. 533, 797 P.2d 983 (1990). Insofar as Defendant contends that the State's breach relieves him of his waiver of rights under SCRA 5–604, we note that our ruling does not rely on any such waiver.

■ Similarly, there is no statutory requirement that notice of termination from a PPD program be filed with the district court. *See* NMSA 1978, § 31–16A–7 (Repl. Pamp.1984). On the other hand, SCRA 5–604(B)(6) states that the six-month period recommences upon "the date of the filing with the clerk of the district court of a notice of termination of a preprosecution diversion program." We assume that the state bears responsibility for filing the notice. But we can detect no prejudice to Defendant from the fact that the notice was not filed. The commencement date for the new six-month period could be calculat-

ed based on the undisputed date of the notice. Failure to file cannot justify dismissal with prejudice. *See State v. Bearly,* 112 N.M. 50, 53–54, 811 P.2d 83, 86–87 (Ct.App.1991) (state's breach of statutory duty does not require dismissal in absence of showing of prejudice).

Thus, if Defendant was accepted into the PPD program and then terminated, there is no reason not to apply SCRA 5–604(B)(6). The State did not violate the six-month rule.

**B. Claim That Defendant Was Not Admitted**

■ Moreover, even if Defendant was not accepted into the PPD program, there was no violation of the six-month rule. To be sure, reading the language of SCRA 5–604(B)(6) literally, it applies only if the defendant has been admitted to a PPD program. Following *State v. Mendoza,* 108 N.M. 446, 774 P.2d 440 (1989), however, we construe the rule more broadly.

*Mendoza* considered SCRA 5–604(B)(2), which provides that the six-month period recommences when the district court finds to be competent a defendant who had previously been found incompetent to stand trial. In *Mendoza* the district court had entered, with the concurrence of both parties, an order suspending the proceedings to determine the defendant's competency to stand trial. After an evidentiary hearing seven months later, the district court found the defendant competent. On the eve of trial, a few days short of six months after the order finding the defendant to be competent, the district court granted the defendant's motion to dismiss for failure to comply with the six-month rule. This Court affirmed the dismissal. The Supreme Court reversed. The Supreme Court rejected what it referred to as this Court's

putes that it had such a contractual obligation. The only reference to dismissal is in the "Waiver of Preliminary Hearing—Intent to Apply to PPD" signed by Defendant and his attorney, which states: "Defendant acknowledges that the criminal information filed by the District Attorney's Office in this case will be dismissed without prejudice if Defendant is accepted into the

PPD Program." Later an assistant district attorney, as well as Defendant and his attorney, signed a "Pre Prosecution Diversion Program Participation Agreement" which states that "[t]he provisions of the *WAIVER OF PRELIMINARY HEARING—INTENT TO APPLY TO PPD* are incorporated herein and made a part hereof."

"hypertechnical analysis" of the rule, *id.* at 447, 774 P.2d at 441, and stated that the rule " 'is to be read with common sense.' " *Id.* at 448, 774 P.2d at 442 (quoting *State v. Flores,* 99 N.M. 44, 46, 653 P.2d 875, 877 (1982)). The Court wrote:

> In the present case, a motion to determine Mendoza's competency and a suspension of the proceedings was agreed to by both sides. The period of time to make this determination must be excluded from determination of the period for commencement of trial. The law is clear that conviction of a legally incompetent accused violates due process. And one who is incompetent cannot stand trial. Therefore, until obtaining the result from the examination, a trial court has no choice but to delay the trial and stay the proceedings. During the time an accused's competency is being assessed, he or she is unavailable for trial. Regardless of who initiates the proceeding a competency examination is clearly on behalf of the accused and in no way infringes on that person's speedy trial rights.

> The same principles which support a recommencement of our six-month rule following a stay based upon a finding of incompetency, SCRA 1986, 5–604(B)(2), support restarting the time period after proceedings have been stayed to determine an accused's competency. In both situations, the delay is clearly for the benefit of the defendant who cannot stand trial until the issue of competency has been properly assessed. These delays are chargeable to the defendant and must be excluded from any speedy trial analysis. A common sense approach of

Rule 5–604(B)(2) mandates this interpretation.

*Mendoza,* 108 N.M. at 449, 774 P.2d at 443 (citations omitted).

Although *Mendoza* might be distinguished from the present case in that competency to stand trial is a matter of constitutional dimensions whereas eligibility for preprosecution diversion is merely a matter of legislative and executive grace under the Preprosecution Diversion Act, NMSA 1978, §§ 31–16A–1 to –8 (Repl.Pamp.1984), the reasoning in *Mendoza* strongly suggests that SCRA 5–604(B)(6) should be interpreted in the same manner as SCRA 5–604(B)(2). The delay necessary to determine whether the defendant is suitable for a PPD program is clearly for the defendant's benefit. No defendant is compelled to participate in or even apply for a PPD program. A defendant who has submitted an application could rescind the application at any time if delays become intolerable. The parties would ordinarily suspend preparation for trial while the State reviews an application for a PPD program. Indeed, Defendant's written waiver of his rights under SCRA 5–604 in this case indicates recognition by all parties that it may take time to determine whether a defendant is suitable for a PPD program.[2] If commencement of the six-month period is not postponed while the State investigates the defendant's suitability, the State may be more reluctant to consider applicants whose backgrounds are not already well-known or readily available, and it may summarily reject applicants who apply too many weeks after arraignment. Reading SCRA 5–604(B)(6) in the same manner as *Mendoza* read paragraph SCRA 5–604(B)(2), we hold that if the defendant has

**2.** NMSA 1978, Section 31–16A–6(B) states in part, "If a defendant is certified eligible by the district attorney and by the preprosecution diversion program, the defendant shall also waive his constitutional right to a speedy trial and any rights as provided by Rule 37(b) of the Rules of Criminal Procedure for the District Court[s]." Rule 37(b) is the predecessor to SCRA 5–604(B). When the Preprosecution Diversion Act was enacted by 1981 Laws, Chapter 33, there was no provision in Rule 37(b) relating to PPD programs. *See* Rules of Criminal Procedure 37(b) (Repl.Pamp.1980). Thus, the legislature could

properly have concluded at the time of enactment that for the state to employ PPD programs without risking expiration of the six-month rule, it would be necessary to obtain waivers from defendants. Later in 1981, however, the Supreme Court promulgated what is now SCRA 5–604(B)(6), which took effect in 1982. *See* Rules of Criminal Procedure 37(b) (Cum.Supp.1982). Once the six-month rule was amended to include a specific provision relating to PPD programs, the requirement in Section 31–16A–6(B) that a defendant waive rights under the rule was no longer necessary.

applied to a PPD program, the six-month period recommences upon a formal determination that the defendant is not suitable for the program. *See State v. Sanchez,* 109 N.M. 313, 315–17, 785 P.2d 224, 226–28 (1989) (SCRA 5–604(B)(7) applies while plea bargain is being assessed); *State v. Lucas,* 110 N.M. 272, 274, 794 P.2d 1201, 1203 (Ct.App.) (same), *cert. denied,* 110 N.M. 260, 794 P.2d 734 (1990); *State v. Eden,* 108 N.M. 737, 741–42, 779 P.2d 114, 118–19 (Ct.App.) (SCRA 5–604(B)(4) applies even when appellate court denies leave to file interlocutory appeal), *cert. denied,* 108 N.M. 681, 777 P.2d 1325 (1989).

Finally, we note that the two irregularities urged by Defendant as requiring dismissal are irrelevant if Defendant was not admitted to the PPD program. If Defendant was not admitted to the PPD program, then the State had no duty—statutory, contractual, or otherwise—to dismiss the complaint. Also, nothing in the Preprosecution Diversion Act or SCRA 5–604 speaks of the need for filing a notice that the defendant has been denied acceptance into a PPD program. In any event, even if we were to read into SCRA 5–604(B)(6) a requirement that such a notice be filed (which would be good practice to avoid controversy), there is no suggestion of prejudice to Defendant from the failure to file a notice in this case. *See Bearly,* 112 N.M. at 53–54, 811 P.2d at 86–87.

### III. CONCLUSION

The district court erred in dismissing with prejudice the information against Defendant less than six months after Defendant was notified of his unsuitability for the PPD program. We reverse the dismissal with prejudice and remand for further proceedings.

**IT IS SO ORDERED.**

DONNELLY and ALARID, JJ., concur.