2007-NMCA-022

152 P.3d 848

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Richelle DAVIS, Defendant–Appellee.**

**No. 26,091.**

Court of Appeals of New Mexico.

Jan. 10, 2007.

Certiorari Denied, No. 30,197, Feb. 8, 2007.

Gary K. King, Attorney General, Santa Fe, NM, Ralph E. Trujillo, Assistant Attorney General, Albuquerque, NM, for Appellant.

John Bigelow, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

PICKARD, Judge.

{1} The State appeals the district court order dismissing the reinstatement of charges against Defendant for her failure to comply with the preprosecution diversion (PPD) program. Although the PPD Act provides that participation in a PPD program may not exceed two years, the Act does not state specifically a time limit for the State to refile charges or to otherwise proceed with the prosecution. *See* NMSA 1978, § 31–16A–7(A) (1984). In this case, we must determine, in the absence of statutory command, the timeliness of the State's reinstatement of charges, filed just after the expiration of Defendant's unsuccessful participation in the

two-year diversion period. We determine that the Legislature did not intend to limit the State's ability to refile charges against Defendant as the district court did in this case. Therefore, we reverse the district court's dismissal of the criminal charge against Defendant.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} On January 22, 2003, the State charged Defendant by criminal information with the crime of embezzlement of property having a total value of $5,000, a third degree felony punishable by three years of imprisonment and a fine. *See* NMSA 1978, § 30–16–8(E) (2006); *see also* NMSA 1978, § 31–18–15(A)(8) (2005). Defendant waived arraignment and pleaded not guilty. Thereafter, on April 22, 2003, Defendant and the State entered into a PPD agreement, under which Defendant waived her rights to a timely trial, pleaded guilty to the charge of embezzlement, and agreed to abide by the agreement's many conditions and requirements in exchange for the State's suspension of the criminal proceedings against her. *See* NMSA 1978, § 31–16A–6 (1981). Accordingly, Defendant pleaded guilty to embezzlement, and the State filed a *nolle prosequi*, explaining that due to Defendant's acceptance into the PPD program, it would not prosecute Defendant on that charge.

{3} Conditions for Defendant's compliance with the PPD agreement required Defendant, among other things, to refrain from violating the law and consuming alcoholic beverages or other controlled substances, to complete 100 hours of community service, to make restitution payments in the amount of $3,000, to obtain a GED certificate, and to maintain gainful employment. Pursuant to the agreement and the PPD statute, Defendant was required to make restitution payments within a year and achieve the rest of the requirements, at most, within two years of the commencement of her participation in the PPD program. *See* § 31–16A–7(A) (stating that a defendant may be diverted for "no less than six months and no longer than two years"). On May 17, 2005, two years and less than a month after Defendant began her participation in the PPD program, the State moved to terminate the program and to reinstate the charge of embezzlement, alleging that Defendant failed to meet the requirements of the agreement. The district court granted the State's motion to reinstate the criminal information charging Defendant with embezzlement. Defendant entered a plea of not guilty. Thereafter, Defendant filed a motion to dismiss the charge for untimeliness, arguing that Defendant completed the program and the State failed to file notice of termination within the two-year statutory period. Without entering any legal conclusions, the district court granted Defendant's motion and dismissed the charges against her with prejudice. The State filed the present appeal.

## DISCUSSION

{4} On appeal, the State argues that the district court erred by ruling that the diversion period contained in the PPD Act controls the time in which the State is required to prosecute a defendant who has not complied with the conditions of the PPD agreement. The State contends that upon an unsuccessful completion of the PPD program, the State may refile charges or otherwise proceed with the prosecution, subject to the time limitations in the Rules of Criminal Procedure, namely the six-month rule contained in Rule 5–604(B) NMRA. The State further argues that because the filing of charges less than a month after the expiration of the diversion period was not done for purposes of delay or to circumvent the six-month rule, which was far from expiration, the district court improperly dismissed the charges for untimeliness.

{5} In response Defendant argues that, pursuant to the PPD Act, when the two-year diversion period ended without termination of the PPD agreement, the State's authority over Defendant ceased. In support of her argument, Defendant refers to the PPD Act and draws an analogy to the case law holding that the district court's authority over a defendant ends upon the expiration of the sentence suspension or deferment period. Defendant argues that, like the expiration of a suspension, deferment, or probation period without violation, a defendant who has participated in the diversion program without a

termination of the PPD agreement has successfully completed the program and may not thereafter be prosecuted on the diverted charges. We are not persuaded by Defendant's arguments.

▪▪▪ {6} In determining the timeliness of the State's reinstatement of charges against Defendant, we must examine the enabling statute, NMSA 1978, §§ 31–16A–1 to –8 (1981, as amended through 1984), authorizing and governing PPD agreements. Statutory construction involves legal questions, which we review de novo. *See State v. Smith,* 2004–NMSC–032, ¶ 8, 136 N.M. 372, 98 P.3d 1022.

> We begin the search for legislative intent by looking first to the words chosen by the Legislature and the plain meaning of the Legislature's language.... Under the plain meaning rule statutes are to be given effect as written without room for construction unless the language is doubtful, ambiguous, or an adherence to the literal use of the words would lead to injustice, absurdity or contradiction, in which case the statute is to be construed according to its obvious spirit or reason.

*State v. Davis,* 2003–NMSC–022, ¶ 6, 134 N.M. 172, 74 P.3d 1064 (internal quotation marks and citation omitted). While interpreting our statutes, we are mindful of "the high duty and responsibility of the judicial branch of government to facilitate and promote the legislature's accomplishment of its purpose." *Smith,* 2004–NMSC–032, ¶ 8, 136 N.M. 372, 98 P.3d 1022 (internal quotation marks and citation omitted).

▪▪ {7} Consistent with our rules of statutory construction, we begin our analysis by examining the language of the governing act. The only provisions of the PPD Act relating to the timing of a defendant's participation in, and the State's termination of, a PPD program state the following:

> A. A defendant may be diverted to a preprosecution diversion program for no less than six months and no longer than two years. A district attorney may extend the diversion period for a defendant as a disciplinary measure or to allow adequate time for restitution, provided that the ex-

tension coupled with the original period does not exceed two years....

> B. If a defendant does not comply with the terms, conditions and requirements of a preprosecution diversion program, his participation in the program shall be terminated, and the district attorney may proceed with the suspended criminal prosecution of the defendant.

Section 31–16A–7. Contrary to Defendant's contention, in no section of the PPD Act does the Legislature's plain language require the State to refile the diverted charges or otherwise proceed with the suspended prosecution within the diversion period. Also directly bearing on the timing of the State's ability to proceed with its prosecution, the PPD Act is silent as to the effect of the expiration of the diversion period on the State's or the court's authority over a defendant.

{8} In contrast, the sentencing statutes specifically address the effect of the expiration of the deferment and suspension periods and the time in which the district court shall dismiss the deferred criminal charges or enter a certificate of successful completion of the sentence:

> Whenever the period of deferment expires, the defendant is relieved of any obligations imposed on him by the order of the court and has satisfied his criminal liability for the crime, the court shall enter a dismissal of the criminal charges.

NMSA 1978, § 31–20–9 (1977).

> Whenever the period of suspension expires without revocation of the order, the defendant is relieved of any obligations imposed on him by the order of the court and has satisfied his criminal liability for the crime. He shall thereupon be entitled to a certificate from the court so reciting such facts....

NMSA 1978, § 31–20–8 (1977).

{9} Our case law construing this language in the sentencing statutes holds that the district court's authority to impose a deferred or suspended sentence or to revoke probation is terminated by statute upon the expiration of the deferment, suspension, or probation term. *See State v. Travarez,* 99 N.M. 309, 311, 657 P.2d 636, 638 (Ct.App.

1983) (holding that the district court lacked jurisdiction to proceed in the case beyond the deferment period after the Legislature repealed the statute permitting execution of a sentence at any time it is found that the defendant violated the sentence deferment terms and enacted Section 31–20–9, "which terminates a defendant's criminal liability when his term of deferment expires"); *see also State v. Lara,* 2000–NMCA–073, ¶¶ 6–7, 10, 12–13, 129 N.M. 391, 9 P.3d 74 (holding that the district court lacked jurisdiction to enter the order of unsatisfactory discharge from probation after the expiration of the probation term and that the defendant was entitled therefore to rely on Section 31–20–8 and expect a certificate of satisfactory completion of probation). This line of cases relies entirely upon the language of the sentencing statutes and " 'the power of the legislature alone to define the court's jurisdiction over the sentencing of offenders.' " *Lara,* 2000–NMCA–073, ¶ 10, 129 N.M. 391, 9 P.3d 74 (quoting *Travarez,* 99 N.M. at 311, 657 P.2d at 638); *see also State v. Gaddy,* 110 N.M. 120, 122–23, 792 P.2d 1163, 1165–66 (Ct.App.1990) (holding that a district court may not enhance a defendant's sentence for habitual offenses after the defendant has served the underlying sentence even where the criminal information was filed prior to the sentence term and drawing an analogy to *Travarez* on the basis that "it reflects this court's perception of a legislative intent to deprive trial courts of jurisdiction to alter sentences once those sentences have been satisfied"). Although we have recognized the penal character of PPD agreements, a participating defendant, obviously, has not been sentenced for any offense. *See State v. Jimenez,* 111 N.M. 782, 786–87, 810 P.2d 801, 805–06 (1991) (recognizing that PPD agreements are drafted to meet a state's penal interests). Therefore, the jurisdictional concerns about a court's power to impose an illegal sentence do not apply to a court's ability to review a participating defendant's performance in the PPD program after the diversion period has lapsed. *See State v. McDonald,* 2003–NMCA–123, ¶ 20, 134 N.M. 486, 79 P.3d 830 ("A district court does not have jurisdiction to impose an illegal sentence because its power to sentence is de-rived exclusively from statute." (internal quotation marks and citation omitted)), *aff'd in part, rev'd in part on other grounds,* 2004–NMSC–033, 136 N.M. 417, 99 P.3d 667.

{10} To the extent that Defendant's argument draws on due process principles to argue that she was entitled to rely upon the expiration of the diversion period for finality in the process, we are not persuaded. Our case law establishing that defendants who have completed their sentences have a reasonable expectation in the finality of their sentences, which thereafter cannot be altered under principles of due process and double jeopardy, applies to defendants who have been sentenced and have satisfied their criminal liability, according to the language of the sentencing statute. *See, e.g., March v. State,* 109 N.M. 110, 111, 782 P.2d 82, 83 (1989) (analyzing the district court's jurisdiction to enhance the defendant's sentence after he completed the sentence under principles of due process and double jeopardy, and holding that "the defendant's objectively reasonable expectation of finality was violated by the State's filing the information as to enhanced sentencing after the defendant's earning of meritorious deductions brought his service of sentence to an end"); *see also Gaddy,* 110 N.M. at 122, 792 P.2d at 1165; *Lara,* 2000–NMCA–073, ¶ 14, 129 N.M. 391, 9 P.3d 74. Thus, our case law indicates that a defendant's reasonable expectation of finality under due process principles exists where the governing statute creates the expectation. Defendant in the present case has not persuaded us that anything in the PPD Act or the PPD agreement creates a similar due process right to an expectation of finality in the diversion period. For these reasons, we will not apply our construction of the sentencing statutes to the PPD Act by terminating a court's authority over a defendant upon the expiration of the diversion period in the absence of any legislative language in the PPD Act directing us to do so.

{11} We believe that our case law construing the legislative intent behind the PPD Act supports the result we reach in the present case. First, we have observed that "[t]he Act contemplates a successful termination of a diversion program, and impliedly, but not

specifically, provides that a prosecution is barred if a diversion program is successfully terminated." *State v. Trammel,* 100 N.M. 543, 544, 673 P.2d 827, 828 (Ct.App.1983) (holding that the State may unilaterally terminate a PPD program, but that decision is subject to judicial review regarding the defendant's compliance with the program) (citation omitted). Therefore, our case law supports the view that the Legislature did not intend that the mere lapse of time without ultimately satisfying the terms of the agreement amounts to a successful completion of the PPD program.

{12} Second, our case law has refused to read into the PPD Act limitations on the State not expressed by the Legislature on grounds that it serves our public policy and the purposes of the PPD Act to "allow the State greater flexibility in dealing with those who participate in a PPD [program]." *State v. Altherr,* 117 N.M. 403, 406, 872 P.2d 376, 379 (Ct.App.1994) (permitting the date of waiver of arraignment to control the running of the six-month rule contained in Rule 5–604 rather than the date of termination from the PPD program in order to facilitate the success of the diversion and to satisfy the intent of Rule 5–604); *see also State v. Hastings,* 116 N.M. 344, 347, 862 P.2d 452, 455 (Ct.App. 1993) (reversing the dismissal of charges for violation of the six-month rule because in part the PPD Act does not specifically require the State to file notice of termination from the PPD program with the district court and the defendant did not suffer prejudice as a result of the State's failure to file the notice).

{13} The Legislature explained that

[t]he purposes of the Preprosecution Diversion Act are to remove those persons from the criminal justice system who are most amenable to rehabilitation and least likely to commit future offenses, to provide those persons with services designed to assist them in avoiding future criminal activity, to conserve community and criminal justice resources, to provide standard guidelines and to evaluate preprosecution programs.

Section 31–16A–2 (citation omitted). In our attempts to serve these purposes, we have afforded the State flexibility to permit "the parties to reach an agreement of mutual benefit," an arrangement that satisfies the State's legitimate penal interests and encourages successful rehabilitation for the eligible and amenable defendants. *Altherr,* 117 N.M. at 406, 872 P.2d at 379 (allowing the State "either to suspend the first proceeding or to dismiss the first indictment" in order to facilitate an agreement between the parties); *see also Jimenez,* 111 N.M. at 786–87, 810 P.2d at 805–06 (noting that alternatives to termination of the PPD program should be considered that would also meet the State's penal interests); *see also Hastings,* 116 N.M. at 348–49, 862 P.2d at 456–57 (overlooking irregularities in the procedure based in part on the theory that "[t]he delay necessary to determine whether the defendant is suitable for a PPD program is clearly for the defendant's benefit").

{14} In the present case, rather than immediately terminating the agreement, the State attempted to assist Defendant in complying with the terms of the agreement and afforded her leeway for her failures, giving her additional opportunities for redemption. Specifically, the State extended the twelve-month diversion period to the maximum permitted by law to allow Defendant more time to make restitution payments. Thereafter, the State abided the full two-year statutory period before evaluating her compliance with the program. Holding off on termination of the program for the length of the maximum diversion term is a lenient action taken for the benefit of Defendant, to encourage her compliance, and to satisfy the State's own penal interests. In short, the State's actions in this case serve the purposes of the PPD Act, actions that we will not prohibit without language in the Act expressing a legislative intent to do so.

■ {15} In Defendant's final argument, she contends that her rights to due process were violated by the State's failure to terminate the PPD agreement until after the two-year period had run because the State "eked every advantage from the relationship" and unfairly benefitted from Defendant's restitution payments. We are not persuaded that Defendant has suffered a due process viola-

tion. First, we note that it is the victim of Defendant's embezzlement, not the State, that ultimately benefits from and receives the restitution payments. Second, Defendant fails to cite any authority in support of this argument. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that an appellate court will not consider an issue if no authority is cited in support of the issue). Third, Defendant may refuse to participate in, or withdraw from, the PPD program and should not benefit from her repeated noncompliance where the State attempted to assist her compliance. Fourth and lastly, although we can imagine a case in which a defendant has substantially complied with the PPD program, such that termination following two years of great efforts may be inequitable, this is not such a case. The record indicates, and Defendant does not challenge, that she failed to satisfy numerous conditions of her PPD agreement. Defendant failed to complete 100 hours of community service, failed to obtain her GED, failed to maintain gainful employment, and failed to make about $450 of the $3,000 in restitution payments she owed. Thus, without a record indicating an inequity created by substantial compliance with the agreement or an abuse of the process, we are not persuaded that the State's failure to terminate the agreement denied Defendant due process.

{16} Finally, we note that although the delay does not rouse concerns in the present case, we can conceive of a case in which prejudice results from the State's delay in refiling charges long after the diversion period. *Cf. Hastings,* 116 N.M. at 347, 349, 862 P.2d at 455, 457 (looking for but detecting no prejudice to defendant from the irregularities in the process or from any delay resulting from either the determination of defendant's unsuitability for the PPD program or the State's failure to file notice of termination from the PPD program with the defendant or the district court, where the State instead sent the defendant notice of nonacceptance into the PPD program); *cf. Gonzales v. State,* 111 N.M. 363, 364, 805 P.2d 630, 631 (1991) (establishing that preaccusation delay may result in a due process violation requiring dismissal of charges where a defendant proves actual and substantial "prejudice and an intentional delay by the state to gain a tactical advantage"). The record reveals that the State filed its motion to terminate the PPD program and its motion to reinstate the charge of embezzlement against Defendant twenty-five days after the expiration of the diversion period. The State claimed below that the delay constituting less than a month resulted from its administrative process evaluating Defendant's compliance with the PPD program at the end of the diversion period. Because the record is without any indication of prejudice to Defendant by the twenty-five day period of time between the expiration of the diversion period and the reinstatement of the charge or any indication of bad faith from the State, this is not a case that raises concerns with delayed process.

**CONCLUSION**

{17} We reverse the district court's order granting Defendant's motion to dismiss the reinstated charges.

{18} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and JAMES J. WECHSLER, Judge.